# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 10, 2015      Decided September 4, 2015

No. 13-3097

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL ANTHONY WEAVER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00096-1)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam, Jr.*, Assistant Federal Public Defender, entered an appearance.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *John P. Dominguez*, Assistant U.S. Attorneys.

Before: HENDERSON, ROGERS and PILLARD, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* PILLARD.

Dissenting opinion filed by *Circuit Judge* HENDERSON.

PILLARD, *Circuit Judge*: This appeal requires us to answer a question left unresolved by the Supreme Court in *Hudson v. Michigan*, 547 U.S. 586 (2006): Whether the exclusionary rule is applicable when law enforcement officers violate the Fourth Amendment's knock-and-announce rule while executing a warrant to arrest a suspect found at home.

The knock-and-announce rule requires that, before officers executing a warrant enter a home, they knock on the door and announce their identity and purpose, and then wait a reasonable time before forcibly entering. In *Hudson*, the Supreme Court held that, when officers violate that rule in executing a search warrant, exclusion of the evidence they find is not an appropriate remedy. The Court reasoned that the officers would have discovered the evidence in any event when they went through the house under the authority of the valid search warrant. As the Court emphasized, the knock-and-announce rule "has never protected" any "interest in preventing the government from seeing or taking evidence described in a warrant." *Id*. at 594. Where officers armed with a search warrant have a judicially-sanctioned prerogative to invade the privacy of the home, the knock-and-announce violation does not cause the seizure of the disputed evidence. In that context, the exclusionary remedy's significant costs outweigh its minimal privacy-shielding role, and its deterrent utility is "not worth a lot." *Id*. at 596.

Unlike the officers in *Hudson*, who had a warrant to search the home, the officers here acted pursuant to a warrant to arrest a person. An arrest warrant reflects no judicial determination of grounds to search the home; rather, it

evidences probable cause to believe that the arrestee has committed a crime, and authorizes his arrest wherever he might be found. If an arrestee is found away from home—at work, on the street, or at someone else's home—the privacy of his home remains inviolate. So, too, if an arrestee is not at home when officers seek him there, or if he comes to the door and makes himself available for arrest, the arrest warrant does not authorize officers to enter the home. Any prerogative an arrest warrant may confer to enter a home is thus narrow and highly contingent on the particular circumstances of the arrest.

An individual subject to an arrest warrant accordingly retains a robust privacy interest in the home's interior. That privacy interest is protected by requiring law enforcement officers executing an arrest warrant to knock, announce their identity and purpose, and provide the arrestee with the opportunity to come to the door before they barge in. And, where evidence is obtained because officers violated the knock-and-announce rule in executing an arrest warrant at the arrestee's home, the exclusionary rule retains its remedial force. Under *Hudson*'s own analytic approach, then, exclusion of the evidence may be an appropriate remedy.

Justice Kennedy took care to underscore in his separate opinion in *Hudson* that "the continued operation of the exclusionary rule, as settled and defined by our precedents, is not in doubt." *Id*. at 603. He provided the fifth vote for the majority opinion because the knock-and-announce violation before the court was "not sufficiently related to the later discovery of evidence to justify suppression." *Id*. The critical inquiry was there, as it is here, whether the knock-and-announce violation could "properly be described as having caused the discovery of evidence," *id*. at 604, and, if so, whether its costs outweigh its benefits. Where the

"requirement of causation" that animates the exclusionary rule has not been obviated as it was by the search warrant in *Hudson*, *id*., and where the exclusionary rule retains remedial force to protect the core Fourth Amendment privacy interest in the home, *cf*. *id*. at 603-04, we consider it our duty to apply it.

We thus analyze the factors the Court considered in *Hudson* to determine whether the exclusionary rule applies when the knock-and-announce rule is violated in the arrest warrant context. We consider whether the violation causes the seizure of evidence such that evidentiary suppression furthers the interests underlying the knock-and-announce rule, and whether the benefits of applying the exclusionary rule outweigh its costs. Examining those factors, we conclude that exclusion was the appropriate remedy here, where officers executing a warrant for defendant Michael Weaver's arrest sought him at home, violated the knock-and-announce rule, and discovered Weaver's marijuana upon their forced entry into Weaver's apartment. Accordingly, we reverse the district court's decision to the contrary.

## I.

Federal agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives began investigating defendant Michael Weaver in 2008, when he came to their attention during the course of a drug-related investigation targeting a different suspect. As part of their investigation into Weaver, the agents searched through trash outside his home and found marijuana. They also learned from the target of the first investigation that Weaver had sold drugs for more than a year and trafficked in significant quantities of marijuana. The agents executed a warrant to search Weaver's residence in late 2009 and discovered more than 500 grams of marijuana,

$38,000 in cash, and drug packaging materials. The agents also reviewed Weaver's bank records and identified regular, unexplained cash deposits and a balance of more than $100,000 from unknown sources. In April 2010, the agents relied on that information to obtain a warrant for Weaver's arrest. Prosecutors indicted Weaver on 52 separate counts, including possession with intent to distribute marijuana and money laundering.

The government was unable to apprehend Weaver until 2012, when the agents learned the location of his new residence. After arriving at Weaver's building, the agents knocked on his apartment door twice. There was no answer, but the agents heard movement inside. They were not concerned that Weaver would flee out a window because the apartment was on a high floor. Less than a minute later, the agents announced "police" and immediately used a key they had obtained from the building's concierge to unlock the door. They did not inform Weaver that they had a warrant to arrest him. As the agents attempted to open the door, someone inside tried to hold the door closed. The officers were able to push the door open, and, after a brief struggle, they subdued Weaver, arrested him, and removed him from the apartment.

In the course of arresting Weaver, the officers smelled marijuana. One of the officers testified that as soon as he "came in" and "looked to the left" or "turned left" toward the kitchen, he observed "bags of marijuana" on the counter. Based on those observations, the officers obtained a search warrant for the apartment and found several kilograms of marijuana, two tablets of oxycodone, a bag of the drug methylenexdioxymethcathinone (commonly referred to as MDMC, or bath salts), and nearly $10,000 in cash. The government then charged Weaver with three additional

counts: one count of possession with intent to distribute marijuana and two counts of possession of a controlled substance.

At trial, Weaver moved to suppress the evidence seized during the 2012 search of his apartment. He contended that the warrant authorizing that search derived solely from the observations agents made while executing the arrest warrants, and that the agents were not legally authorized to be in his apartment when they made those observations because they had violated the knock-and-announce rule. Weaver further argued that *Hudson* did not preclude the application of the exclusionary rule to his case.

The district court rejected Weaver's contentions and denied his motion to suppress. The district court first concluded that there was no knock-and-announce violation because the officers knocked, announced "police," and then waited a reasonable time before opening the door. Even if there had been a violation, the court held that Weaver would not prevail because it concluded that *Hudson* held the exclusionary rule inapplicable to knock-and-announce violations generally.

In a separate order, the district court held that Weaver's speedy trial rights were violated with respect to the first 52 counts of the indictment, and so dismissed them. The government then entered into an agreement with Weaver concerning the more recent counts of the indictment. The government dismissed the counts for possession of oxycodone and MDMC, and Weaver agreed to a bench trial on stipulated facts on the remaining charge of possession with intent to distribute marijuana. After that trial, the district court found Weaver guilty.

Weaver appeals the district court's denial of his suppression motion. On such an appeal, we review the court's legal conclusions *de novo* and its findings of fact for clear error. *United States v. Pindell*, 336 F.3d 1049, 1052 (D.C. Cir. 2003).

## II.

### A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The constitutional reasonableness of a search or seizure in the home depends on, among other things, whether law enforcement officers have complied with the knock-and-announce rule. *Wilson v. Arkansas*, 514 U.S. 927, 931, 934 (1995); *see also* 18 U.S.C. § 3109 (setting forth a statutory knock-and-announcement requirement). The rule requires, subject to exceptions not relevant here, that law enforcement officers executing a warrant—whether for search or arrest—knock on an individual's door, announce their identity and purpose, and then wait a reasonable amount of time before forcibly entering a home. *Wilson*, 514 U.S. at 934-36; *see also United States v. Banks*, 540 U.S. 31, 38-39 (2003); *Sabbath v. United States*, 391 U.S. 585, 588 & n.2 (1968); *Miller v. United States*, 357 U.S. 301, 312-14 (1958).

Notwithstanding the district court's conclusion to the contrary, there is no dispute on this record that the constitutional safeguards imposed by the knock-and-announce rule were violated here. As the government correctly concedes on appeal, federal agents violated the rule by failing to announce their purpose before entering Weaver's apartment. Appellee Br. 19-20; *see also Miller*, 357 U.S. at 309-10; *United States v. Wylie*, 462 F.2d 1178, 1184-85 (D.C.

Cir. 1972). Both parties also agree that unless the agents were legally present in Weaver's home when they viewed the marijuana, their observations could not serve as a lawful basis for the issuance of the search warrant. Appellee Br. 41 n.11; Appellant Br. 22-23; *see Horton v. California*, 496 U.S. 128, 136 (1990). If the officers' forcible entry into Weaver's home was unlawful, their presence in his home was also unlawful, and their observations could not serve as the basis for a search warrant. Consequently, the sole question before us is whether the exclusionary rule applies to evidence obtained as a result of a knock-and-announce violation committed when law enforcement officers execute an arrest warrant, as opposed to a search warrant.

Where it applies, the exclusionary rule prohibits the government from introducing in its case in chief evidence obtained in violation of the Fourth Amendment. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Weeks v. United States*, 232 U.S. 383, 398 (1914). Evidentiary exclusion "compel[s] respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard" the Fourth Amendment's commands. *Elkins v. United States*, 364 U.S. 206, 217 (1960). The Supreme Court has acknowledged, however, that exclusion is not appropriate in every case. Application of the rule is warranted only when its objectives are "most efficaciously served." *United States v. Leon*, 468 U.S. 897, 908 (1984) (internal quotation marks omitted); *see also Davis v. United States*, 131 S. Ct. 2419, 2426-27 (2011); *Herring v. United States*, 555 U.S. 135, 140-41 (2009). "Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly unwarranted.'" *Davis*, 131 S. Ct. at 2426-27.

**B.**

In *Hudson*, the Supreme Court considered whether exclusion was warranted when law enforcement officers violated the knock-and-announce rule while executing a search warrant. 547 U.S. at 588. Two factors governed its consideration: whether there was a causal link between the violation and the seizure of evidence and whether the rule's deterrence benefits outweighed the costs of excluding probative evidence.

As to causation, the *Hudson* Court reasoned that the exclusionary rule is only triggered when the constitutional violation is "a 'but-for' cause of obtaining evidence," provided that causal connection is not "too attenuated." *Id.* at 592. In *Hudson*, "the constitutional violation of an illegal *manner* of entry was *not* a but-for cause of obtaining the evidence." *Id.* That is because the knock-and-announce violation did not expand the breadth of the search authority conferred on the officers by the search warrant they had in hand, pursuant to which they already were privileged to obtain the incriminating evidence. *Id.*

Even if the knock-and-announce violation had been a but-for cause of obtaining the evidence, causation in *Hudson* was too attenuated. *Id.* at 592-93. Attenuation occurs "when the causal connection is remote." *Id*. at 593. Attenuation also occurs, the Court explained, when "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id*. Having held there was no but-for causation, the Court did not analyze whether causation was too remote. It did hold, however, that even if there were but-for causation, the interests protected by the knock-and-announce rule nonetheless would not, in the search warrant context, be

served by suppression of the evidence obtained. *Id.* at 593-94. In that context, the *Hudson* Court observed, the knock-and-announce rule protects personal safety, property, and a residuum of privacy not obviated by the search warrant. It protects personal safety by preventing violence by a surprised resident. *Id.* at 594. It avoids destruction of the doorway of a house when officers forcibly open it instead of using the requisite knock and announcement of identity and purpose to summon the homeowner to the door. *Id.* And it "protects those elements of privacy and dignity that can be destroyed by a sudden entrance" by giving residents an opportunity "to pull on clothes[,] get out of bed," and otherwise "collect [themselves] before answering the door." *Id.* (internal quotation marks omitted). The Court emphasized that "the knock-and-announce rule has never protected . . . one's interest in preventing the government from seeing or taking evidence described in a warrant." *Id.* As Justice Kennedy vividly pointed out, "[w]hen . . . a violation results from want of a 20–second pause but an ensuing, lawful search lasting five hours discloses evidence of criminality, the failure to wait at the door cannot properly be described as having caused the discovery of evidence." *Id.* at 603-04 (Kennedy, J., concurring). "[T]he interests that *were* violated . . . ha[d] nothing to do with the seizure of the evidence," leading the Court in *Hudson* to hold the exclusionary rule inapplicable. *Id.* at 594 (majority opinion).

The Court in *Hudson* separately examined whether the "deterrence benefits" of applying the exclusionary rule to violations of the knock-and-announce rule during search warrant executions "outweigh its substantial social costs." *Id.* (internal quotation marks omitted). The most significant of the "considerable" costs of applying the exclusionary rule is the "grave adverse consequence that exclusion of relevant incriminating evidence always entails," namely "the risk of

releasing dangerous criminals into society." *Id.* at 595. The Court cautioned that allowing an exclusionary remedy also could lead to a "flood" of defendants claiming knock-and-announce violations, which would require judicial resolution of complicated, fact-intensive issues. *Id.* It could also lead officers to wait longer than constitutionally required before entering a dwelling, and thus "produc[e] preventable violence against officers in some cases, and the destruction of evidence in many others." *Id.*

The Court weighed those costs against the deterrence value of applying the exclusionary rule in the search warrant context, which it concluded is minimal. *Id.* at 596. Violating the warrant requirement altogether often produces incriminating evidence not otherwise obtainable, *see id.*, and the exclusionary rule is needed to blunt that incentive, *see Mapp*, 367 U.S. at 656; *Elkins*, 364 U.S. at 217. Violating the knock-and-announce requirement when executing a search warrant, by contrast, does not provide officers with an opportunity to obtain evidence that the warrant, already in hand, would not otherwise authorize them to get. *Hudson*, 547 U.S. at 596; *see also id.* at 592. (Where an unannounced entry is needed to serve important law enforcement interests, such as where officers have a reasonable suspicion that evidentiary destruction or life-threatening resistance would accompany a duly announced entry, the knock-and-announce requirement is suspended. *Id.* at 596.) The Court concluded that law enforcement officers armed with search warrants have scant incentive to violate the knock-and-announce rule; moreover, it noted, other deterrents—civil suits and the increasing professionalism of police forces—are sufficient to deter such violations. *See id.* at 596-99.

As a result of those considerations, the Court held that evidentiary exclusion was not required when officers violated

the knock-and-announce rule in the course of executing a search warrant.

## III.

### A.

*Hudson* has not answered the question before us. The government argues, and the dissent agrees, that because the exclusionary rule was held inapplicable in *Hudson*, it is equally inapplicable here. We of course employ *Hudson*'s legal framework in considering whether the exclusionary remedy is appropriate here. But we cannot accept the government's contention that our analysis begins and ends with the outcome of *Hudson*. We must independently examine whether the logic of *Hudson* applies here to the same effect, or whether the arrest warrant context at issue here is so materially distinct that it requires a different result.

The government and dissent propose we follow an interpretation of *Hudson* that is divorced from its context. They contend that *Hudson* held that the exclusionary rule has no application to any violation of the knock-and-announce rule, regardless of whether the violation occurred during the execution of a warrant to search the home or to arrest a suspect. Dissent at 1. In their view, *Hudson* already held that the exclusionary rule is inapplicable whenever the knock-and-announce rule is violated—even where officers have only an arrest warrant and not a search warrant.

*Hudson* does not support that approach. The dissent plucks general statements from *Hudson* to argue that the Court intended its holding to extend beyond the search warrant context. *See* Dissent at 1 & n.1; *see also id.* at 9-11. But the Court, contrary to the dissent's characterization, articulated the question before it in search-warrant-specific

terms: The opening sentence of the opinion stated that the question presented was "whether violation of the 'knock-and-announce' rule requires the suppression of all evidence found in the *search*." 547 U.S. at 588 (emphasis added). The Court's reasoning was grounded in the context before it. When describing the interests the knock-and-announce rule protected, for example, it emphasized that "[w]hat the knock-and-announce rule has never protected . . . is one's interest in preventing the government from seeing or taking *evidence described in a warrant*." *Id.* at 594 (emphasis added). Search warrants—and not arrest warrants—"describe" "evidence" and authorize officers to "take" that evidence. The precedents discussed and relied on by both the majority opinion and Justice Kennedy's concurrence are the Court's precedents concerning search warrants, *see id.* at 593 (discussing cases "excluding the fruits of unlawful warrantless searches"), further suggesting that the Court did not conceive of its decision as sweepingly as the government contends.[1]

We reject the government's and the dissent's insistence that the issue here has already been decided by *Hudson*. It should go without saying that a holding can be understood only by reference to the context of the case in which it was rendered. *See Phelps v. United States*, 421 U.S. 330, 333-34 (1975) (cautioning that the Court's statements must be "read in the context of the facts of th[e] case" before it); *Armour &*

---

[1] The precedents the Court cited and discussed involved *home* warrants and searches, not *arrest* warrants executed at home. 547 U.S. at 590-91, 593, 602 (citing *United States v. Ramirez*, 523 U.S. 65 (1998); *Mapp v. Ohio*, 367 U.S. 643 (1961); *Weeks v. United States*, 232 U.S. 383 (1914)); *see also* 547 U.S. at 603 (Kennedy, J., concurring in part and concurring in the judgment) (citing *Ramirez*).

*Co. v. Wantock*, 323 U.S. 126, 132-33 (1944) (emphasizing that the Court's "opinions are to be read in the light of the facts of the case under discussion," as the Court cannot practically "writ[e] into them every limitation or variation which might be suggested by the circumstances of cases not before the Court.").

The Supreme Court's Fourth Amendment cases vividly illustrate that the precise scope and limits of a constitutional principle articulated in one case often are not apparent until the Court has had opportunities to apply it in new situations that help to elucidate it. *Compare Florida v. Jardines*, 133 S. Ct. 1409, 1415-16 (2013) (holding that the use of a drug-sniffing dog on a homeowner's porch was a search under the Fourth Amendment), *with United States v. Place*, 462 U.S. 696, 707 (1983) (holding that a sniff by a narcotics-detection dog of an individual's luggage did not constitute a search under the Fourth Amendment); *see also* Dissent at 6-7 (collecting cases charting the Court's incremental approach to creating exceptions to the exclusionary rule).

The Court in *United States v. Knotts*, 460 U.S. 276, 278-79, 281-82 (1983), for example, held that no search occurred and thus no warrant was required when officers tracked defendants' whereabouts by placing a radio transmitter in a drum of illicit drug ingredients, so that when defendants picked up the drum they unwittingly carried the transmitter with them. Defendants had no reasonable expectation of privacy and thus no Fourth Amendment rights against the government using that means to obtain information they already were exposing to the public. *Id.* at 281-82. The next year, in *United States v. Karo*, 468 U.S. 705 (1984), however, the Court applied *Knotts*'s reasoning to support the opposite result on analogous but materially different facts: A similar use of a radio transmitter placed in a can of drug ingredients

violated the defendant's Fourth Amendment rights because the transmitter was used to track the defendant as he carried the chemicals inside a private home. *Id*. at 707. *United States v. Jones*, 132 S. Ct. 945 (2012), revealed yet another important consideration. In *Jones*, the Court considered whether the government's installation of a GPS device on a defendant's car to monitor its movements on public roads constituted a search. *Id.* at 948. The Court in *Jones* distinguished *Knotts* and *Karo*, pointing out that in neither of the prior cases had the Court been faced with a situation in which the defendant possessed the property when the government committed the trespass to insert the information-gathering device. *Id.* at 952.

We cannot presume that *Hudson* mandates the same result for violations of the knock-and-announce rule in both the search and arrest warrant contexts. Instead, we must assess whether, as Weaver argues, the arrest warrant context is materially distinguishable from the search warrant context. The government's and the dissent's efforts to find in *Hudson* a categorical rule deciding this case cannot be squared with the pervasive and necessary incrementalism of judicial decision making. *Hudson* addressed the propriety of the exclusionary remedy for a knock-and-announce violation in the search warrant context. The Court never mentioned the parallel question as it arises in the context of executing arrest warrants. For the reasons discussed in the next sections, we conclude that the differences between search and arrest warrants distinguish this case from *Hudson*.

## B.

The requirements for search warrants and arrest warrants protect distinct privacy interests, and the two types of warrants authorize law enforcement officers to take different

actions. The interests the knock-and-announce rule protects correspondingly differ, depending on the type of warrant law enforcement officers are executing. Because of those differences, the Court's analysis in *Hudson* cannot apply the same way or yield the same result here.

An individual's interest in protecting the privacy of his home is of the highest order. *See, e.g.*, *Jardines*, 133 S. Ct. at 1414; *Kyllo v. United States*, 533 U.S. 27, 31 (2001). As Justice Kennedy underscored in *Hudson*,

> privacy and security in the home are central to the Fourth Amendment's guarantees as explained in our decisions and as understood since the beginnings of the Republic. This common understanding ensures respect for the law and allegiance to our institutions, and it is an instrument for transmitting our Constitution to later generations undiminished in meaning and force. It bears repeating that it is a serious matter if law enforcement officers violate the sanctity of the home by ignoring the requisites of lawful entry.

547 U.S. at 603. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo*, 533 U.S. at 31 (internal quotation marks omitted); *see also Jardines*, 133 S. Ct. at 1414 ("[W]hen it comes to the Fourth Amendment, the home is first among equals."); *Minnesota v. Carter*, 525 U.S. 83, 99 (1998) (Kennedy, J., concurring) ("[I]t is beyond dispute that the home is entitled to special protection as the center of the private lives of our people."); *Payton*, 445 U.S. at 585 ("[T]he physical entry of the home is the chief evil against which the wording of the

Fourth Amendment is directed." (internal quotation marks omitted)).

Law enforcement officers' authority under an arrest warrant to enter and search a home is both more conditional and more circumscribed than their authority under a search warrant. Officers armed with a search warrant may enter a home and search for the items described in the warrant anywhere in the home where those items might be located. *See Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987). An arrest warrant, by contrast, authorizes a much more limited intrusion into the home. *See, e.g.*, *Steagald v. United States*, 451 U.S. 204, 213-14 & n.7 (1981); *Payton v. New York*, 445 U.S. 573, 603 (1980). In executing an arrest warrant, officers may enter an individual's home only when they have reason to believe the arrestee is there, *Payton*, 445 U.S. at 603, may look only where a person might reasonably be found, and must stop searching once they locate him, *Maryland v. Buie*, 494 U.S. 325, 330, 332-33 (1990); *United States v. Thomas*, 429 F.3d 282, 287 (D.C. Cir. 2005).

When officers have lawfully accessed an area of the home in search of an arrestee, they may seize items in plain view that they have probable cause to believe are evidence of a crime. *See, e.g.*, *Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). Arresting officers must not routinely search every room in a home; when arresting an individual at home, the arrest warrant's authority is confined to locating the person, securing the area within his reach, and making a quick and limited sweep of the immediately adjoining areas from which an attack could be launched. *See, e.g.*, *Buie*, 494 U.S. at 327, 334; *Chimel v. California*, 395 U.S. 752, 763, 766 (1969). Officers may also perform a sweep of other areas of the home if they have "articulable facts which . . . would warrant a

reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334.[2] Once officers find the arrestee, however, they are no longer authorized by the arrest warrant to enter other rooms in the home; the arrestee retains an expectation of privacy in those areas. *Id.* at 333. In sum, the timing and scope of lawful searches of a home pursuant to an arrest warrant are limited by whether and where the arrestee is in the home when he submits to arrest.

An arrestee's location at the time of arrest is likely to depend on whether officers comply with the knock-and-announce rule. The knock-and-announce rule requires officers to announce their presence and purpose and give an arrestee an opportunity to open the door of his home. *See Miller*, 357 U.S. at 308 (citing Semayne's Case (1604) 77 Eng. Rep. 194, 195; 5 Co. Rep. 91a); *Banks*, 540 U.S. 31, 38-39. Any governmental agent must "signify the cause of his coming, and … make request to open doors." *Miller*, 357 U.S. at 308 (quoting Semayne's Case 77 Eng. Rep. at 195). Officers armed with an arrest warrant may only "break open doors to take the person suspected, *if upon demand he will not*

---

[2] The dissent argues that we have mischaracterized *Buie*. Dissent at 22. That is not so. In *Buie*, the Supreme Court specifically described the kind of sweep officers can make without reasonable suspicion as "quick and limited." 494 U.S. at 327. Such a sweep "may extend only to a cursory inspection of those spaces where a person may be found," and may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335-36. We agree that a sweep supported by a reasonable suspicion may be more extensive. But, such a sweep must be "justified by the circumstances," *id.* at 335, and the government has not argued such circumstances are present here.

*surrender himself.*"  *Accarino v. United States*, 179 F.2d 456, 461 (D.C. Cir. 1949) (emphasis added) (internal quotation marks omitted).

As the Supreme Court recognizes, when officers break the door of a home to arrest someone, they "invade[] the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Miller*, 357 U.S. at 307.  In the arrest warrant context, the knock-and-announce rule protects the arrestee's privacy as well as his property and the officers' safety.  That privacy interest is not limited—as it is in the face of a warrant to search the home—to providing the arrestee with an opportunity to compose himself or get dressed, but also enables the arrestee to preserve the privacy of his "castle" by surrendering himself at the door.  If an arrestee so surrenders himself, officers cannot make the more extensive intrusion into the home that they are authorized to make when an arrestee does not come to the door.  The knock-and-announce rule consequently protects an arrestee's interest in shielding intimate details of his home from the view of government agents.

A person's right to the privacy of his home does not require him to have any special reason for claiming that privacy; the Constitution recognizes a person's privacy in the home as valuable in and of itself.  It is, however, easy to understand the additional value of the knock-and-announce rule to a person facing arrest at home, who may have any number of reasons for wanting to surrender himself at the door and shield the remainder of his home from view. Someone living with his family might, for example, prefer to surrender himself on his doorstep to avoid being arrested in front of his family members, especially children.  A person may also desire to keep private and personal papers and effects in the home, or the fact or identity of a guest, from

government agents' view. The Fourth Amendment's protection of the privacy of personal spaces, documents, and things at home applies whether or not they are evidence of wrongdoing or a potential source of embarrassment. "Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." *Miller*, 357 U.S. at 313; *see also Hicks*, 480 U.S. at 329; *Carter*, 525 U.S. at 110 (Ginsburg, J., dissenting).

## C.

Contrary to the argument advanced by the dissent, our decision in *United States v. Southerland*, 466 F.3d 1083 (D.C. Cir. 2006), does not "directly refute the search/arrest distinction" just described. Dissent at 13. *Southerland* involved a knock-and-announce violation during execution of a search warrant. It was pending on appeal in this court when the Supreme Court decided *Hudson*. On reargument, Southerland abandoned his constitutional claim and argued that *Hudson* did not apply to the violation of his *statutory* knock-and-announce right. 466 F.3d at 1083. We concluded that the constitutional and statutory knock-and-announce rules were one and the same, *id.* at 1085-86, making the exclusionary remedy equally inapplicable to the violations during Southerland's and Hudson's home searches, *see id.* at 1084-85.

The dissent draws an unwarranted implication from *Southerland*'s discussion of two older cases—*Miller* and *Sabbath*—that had reversed denials of evidentiary suppression. *See Sabbath*, 391 U.S. at 585-87; *Miller*, 357 U.S. at 303-04. Each of those cases involved violations of statutory knock-and-announce provisions in an arrest context. Southerland invoked those cases in his effort to distinguish

*Hudson* and salvage his exclusionary remedy on the ground that *Miller* and *Sabbath* addressed statutory claims and held suppression to be appropriate. 466 F.3d at 1084-85. We rejected the proposed distinction between the constitutional and statutory versions of the knock-and-announce rule. *Id.* at 1086. The fact that both *Miller* and *Sabbath* were arrest cases was not relevant to *Southerland*, which was a search case; we simply had no occasion to address whether the exclusionary rule continues to apply to a knock-and-announce violation committed when officers seek to *arrest* a suspect at home.

The Supreme Court's discussion in *Hudson* itself was similarly limited. That Court referred to *Miller* and *Sabbath* in confirming the common historical roots of the statutory and constitutional knock-and-announce rules, but did not say anything about overruling the suppression remedy where officers fail to knock and announce before entering homes to effectuate arrests. 547 U.S. at 589. Indeed, *Miller* and *Sabbath*'s validation of the exclusionary remedy for knock and announce violations in the arrest context—undisturbed by *Hudson*—is more of an obstacle to the dissent's position than *Southerland* is to ours. Even the government here, which was clearly aware of the *Southerland* case, *see* Appellee Br. at 19, does not accord it the force that the dissent urges.

In sum, we agree with *Southerland* that *Hudson* provides the relevant legal framework for determining whether exclusion is the appropriate remedy when officers violate the knock-and-announce rule. But, for the reasons already discussed, neither *Hudson* nor *Southerland* considered or answered the question before us.

**D.**

Finally, the out-of-circuit cases the dissent cites, Dissent at 1 n.3, 11-12, provide at most weak support for the proposition that *Hudson* applies in the arrest-warrant context.

The First Circuit has held, as the dissent points out, that "*Hudson* applies with equal force in the context of an arrest warrant." *United States v. Pelletier*, 469 F.3d 194, 199, 201 (1st Cir. 2006); *see also United States v. Jones*, 523 F.3d 31, 36-37 (1st Cir. 2008). The First Circuit's decisions, however, do not address the distinctions between arrest and search warrants.[3] Because we believe those distinctions are material to *Hudson*'s analysis, the First Circuit's failure to acknowledge them undercuts those decisions' persuasive force.

The other cases the dissent identifies are not even arguably in conflict with our decision. *See* Dissent at 12 (citing *United States v. Smith*, 526 F.3d 306, 311 (6th Cir. 2008), *and United States v. Ankeny*, 502 F.3d 829, 835-36 (9th Cir. 2007)). Those cases concern application of *Hudson* to the search warrant context, not the arrest warrant context. The dissent quotes language from those opinions out of context to support points not made by the opinions themselves.[4] In *Smith*, for example, the defendant argued that

---

[3] Moreover, it does not appear that in either *Pelletier* or *Jones* the defendants brought those distinctions to the attention of the court, nor, indeed, did the government in its briefing in *Jones* rely on either *Hudson* or *Pelletier*.

[4] Several of the other cases and articles the dissent cites, *see* Dissent at 1 nn. 2-3, 5, merely describe the holding of *Hudson*. Those cases do not specify, let alone hold, that *Hudson* prevents application of the exclusionary rule to a knock-and-announce violation *in the*

officers failed to abide by the knock-and-announce rule when conducting a search, not when making an arrest. 526 F.3d at 308. The officers lacked a search warrant, but the court concluded that their search of the defendant's home was nevertheless reasonable because he was under house arrest and thus had a diminished expectation of privacy. *Id.* at 308-09. The court concluded that *Hudson* "was not confined to situations in which the officers violate the knock-and-announce rule after obtaining a [search] warrant as opposed to situations, like this one, where they allegedly violate the rule when they need not obtain a warrant" in order to perform a constitutionally valid home search. *Id*. at 311. *Smith* had no occasion to consider whether *Hudson* was confined to search as opposed to arrest cases.

Similarly, *Ankeny*'s holding in no way conflicts with ours. In that case, the defendant moved to suppress evidence seized by officers because, he argued, the officers failed to knock and announce their presence when executing a search warrant. 502 F.3d at 833-34.[5] The defendant contended that

---

*arrest warrant context*. We have not found imprecise descriptions of *Hudson* in secondary sources or courts' dicta to provide helpful guidance in applying *Hudson*'s analysis to the current case. Additionally, in two of the state-court cases the dissent invokes, Dissent at 1 n.3, the courts held that evidentiary exclusion is the appropriate remedy for violations of state knock-and-announce rules. *See State v. Cable*, 51 So. 3d 434, 444 (Fla. 2010); *Berumen v. State*, 182 P.3d 635, 642 (Alaska Ct. App. 2008).

[5] In *Ankeny*, the defendant had outstanding arrest warrants, but it appears that officers entered his home pursuant to a search warrant. 502 F.3d at 833 (recounting that officer announced "police, search warrant" before breaking down the defendant's door). In any event, if officers violated the knock-and-announce rule armed with *both* arrest and search warrants, presumably the officers would, as in

his case was not governed by *Hudson* "because the police could have obtained a no-knock warrant but failed to do so," but the court "decline[d] to limit *Hudson* so narrowly to its facts." *Id.* at 835-36. The court did not consider the propriety of an exclusionary remedy for knock-and-announce violations committed during the execution of arrest warrants. Despite the dissent's assertions to the contrary, neither *Smith* nor *Ankeny* speak to whether or how *Hudson* applies when officers violate the knock-and-announce rule when they lack a search warrant and arrive at the house solely to execute a warrant for the inhabitant's arrest.

## IV.

Given the differences between search warrants and arrest warrants, the conclusions drawn in *Hudson* do not resolve this case. Instead, we must independently examine the factors identified in *Hudson*—causation and the costs and benefits of exclusion—to determine whether application of the exclusionary rule is appropriate. Examining those factors, we conclude that the exclusionary rule is the appropriate remedy for a violation of the knock-and-announce rule committed during execution of an arrest warrant.

## A.

We first consider causation. *See Hudson*, 547 U.S. at 592-93. In the arrest warrant context, the place where an individual is arrested determines what officers might see and where they are permitted to search. A knock-and-announce violation, leading to an arrest inside the home rather than at the front door, is thus the immediate cause of officers

---

*Hudson*, have a valid basis for seizure of the evidence independent of the knock-and-announce violation, which is not the case here.

intruding further within a home than they otherwise would and obtaining evidence that they are not authorized to see. That clear and strong causal connection distinguishes this case from *Hudson*.

Law enforcement officers' failure to knock and announce deprives the arrestee of any opportunity to answer the door and surrender himself at the threshold of his home. When not properly summoned by officers knocking and announcing their identity and purpose, an arrestee might be located anywhere in the home, perhaps in a bedroom or on an upper floor of a multi-level dwelling. As a result of entering unannounced, the officers gain access to more—perhaps a great deal more—of a home's interior than they would have had they fulfilled their constitutional obligation to knock, announce, and allow the arrestee time to come to the door. As officers move through a house to locate an arrestee, they are able to view more portions of its interior. If they find the arrestee in a study or bedroom, searching places within his immediate reach and protectively sweeping adjacent areas is likely to be more intrusive and revealing than it would have been had those searches occurred on a front stoop or in a foyer. Officers' failure to knock and announce, therefore, can cause them to view areas of the home and discover evidence that they would not have otherwise have constitutional authority to see. In such cases, the constitutional violation is the direct cause of law enforcement officers obtaining evidence beyond that which the warrant lawfully authorizes.

Requiring officers to knock and announce when executing an arrest warrant guards the privacy interest in the home in a way that the same requirement cannot do when officers have a warrant to search the home. Unlike officers armed with a search warrant, officers armed solely with an arrest warrant do not have the authority to examine any

papers, gather any effects, or search the various nooks and crannies of an arrestee's home. They are authorized to make only the limited intrusion into the home necessary to locate and seize the arrestee. *See Payton*, 445 U.S. at 603. Once they locate the arrestee, officers may intrude no further. The knock-and-announce rule, by providing an arrestee with the opportunity to surrender himself at the door, thereby enables the arrestee to minimize the scope of that intrusion and protect the intimacies of his home from the officers' view. Suppressing evidence obtained in violation of the knock-and-announce rule thus directly serves the interests protected by the rule.

The dissent presumes that, because the same substantive knock-and-announce requirements apply in both the search and arrest context, the rule protects the same interests. *See* Dissent at 17-19. In *Hudson*, however, the Supreme Court had no occasion to consider or specify the interests protected by the requirement that officers knock and announce when executing an arrest warrant. *See* 547 U.S. at 594 ("What the knock-and-announce rule has never protected . . . is one's interest in preventing the government from seeing or taking evidence described in a warrant."). *Hudson* concluded that the interest in privacy in the home that is obviated when a judge issues a search warrant based on probable cause of crime or evidence of crime in the home is an interest that the knock-and-announce rule no longer serves. Our analysis recognizes that the privacy interest in the home remains intact when a judge has made only the different determination of probable cause that a suspect has committed a crime warranting arrest. Application of the knock-and-announce rule in the arrest warrant context enables the arrestee to protect his privacy at home by surrendering himself at the door.

**B.**

We next weigh, in the arrest warrant context, the costs of excluding evidence obtained by violation of the knock-and-announce rule against its benefits in protecting the Fourth Amendment right to privacy in the home and deterring violations of that right. *See Hudson*, 547 U.S. at 594-98. Because application of the exclusionary rule here would result in appreciable deterrence, the benefits of applying the rule outweigh its acknowledged social costs.

The costs of applying the exclusionary rule to this kind of constitutional violation in the arrest warrant context are similar to those described in *Hudson*: The courts will need to expend resources to resolve close claims of knock-and-announce rule violations, officers' entry might be delayed by knocking, announcing, and waiting for response, and, most importantly, relevant, incriminating evidence will be rendered unavailable at a defendant's trial. *Id.* at 595.[6]

Those costs are real, but they are outweighed by a privacy interest and opportunity to deter its violation that is substantially stronger here than the negligible privacy interest and deterrence value in *Hudson*. As the Court observed in *Hudson*, "the value of deterrence depends on the strength of the incentive to commit the forbidden act." *Id.* at 596. Officers armed with only an arrest warrant—who, for whatever reason, did not seek or were unable to obtain a search warrant—have a strong incentive to violate the knock-

---

[6] The mere existence of that last cost, always present when the exclusionary rule is applied, is insufficient in and of itself to overcome an appropriate application of the rule. *Cf. Leon*, 468 U.S. at 906-09. If it were otherwise, the exclusionary rule would not exist.

and-announce rule. Entering a home unannounced to execute an arrest warrant increases the chances that officers will gain entry to parts of a home they would not otherwise have entered to carry out the arrest, and will thereby give themselves an opportunity to find incriminating evidence they otherwise would never see.

The facts of this case aptly highlight when and why officers might want to violate the knock-and-announce rule. The officers were executing an arrest warrant that was over two years old, based on offenses committed even earlier. The officers lacked recent incriminating evidence against Weaver. By failing to knock and announce, they were able to obtain new, valuable evidence from Weaver's kitchen without a search warrant and secure a superseding indictment that was not susceptible to a speedy trial challenge. The government's ability to parlay an old arrest warrant into new evidence supporting new charges demonstrates precisely why officers armed with only an arrest warrant would be tempted to seek the suspect at home and violate the knock-and-announce rule.

Officers can conduct limited searches incident to a lawful arrest in the home, as the dissent acknowledges. Dissent at 23. But the dissent fails to recognize that the scope and intrusiveness of those searches varies depending on where in the home the arrestee is located. By violating the knock-and-announce rule, officers give themselves a better chance of arresting an individual inside his home, where a search or protective sweep will be more revealing than one conducted on the home's threshold.

Given the strong incentives officers may have to violate the rule, the deterrence calculus is starkly different here than it was in *Hudson*. In *Hudson*, the Court's balancing analysis was driven, in large part, by its conclusion that the incentives

to violate the rule were weak and therefore that deterrence was virtually worthless. 547 U.S. at 596. The opportunities to gain evidence not otherwise accessible increase incentives to violate the rule here, which correspondingly raises the exclusionary rule's deterrence value. That appreciable deterrence outweighs the costs of the rule.

It would make little sense to jettison the exclusionary rule simply because, as the dissent presumes, officers rarely violate the knock-and-announce rule when executing an arrest warrant. If violations are rare, then the actual cost of applying the exclusionary rule will be minimal. The courts will not be flooded with cases claiming failures to observe the rule and very few dangerous criminals will go free because of officers' missteps. *Cf.* Dissent at 20. The paucity of cases challenging violations of the knock and announce rule when officers execute an arrest warrant may very well be due to the deterrent effect of past applications of the exclusionary rule. *See generally Sabbath*, 391 U.S. 585; *Miller*, 357 U.S. 301.

Here in the arrest-warrant context, unlike in *Hudson*, there are grounds to conclude that application of the exclusionary rule to knock-and-announce violations would result in appreciable deterrence of constitutional violations. When application of the exclusionary rule provides beneficial deterrence, and that benefit outweighs the costs of the rule, it applies.

## C.

The government contends that its agents should not have to wait for an arrestee to take any particular series of steps that might shield his home from the agents' view. The government is correct insofar as agents need not, for example, make every effort to enable an arrestee to open the door in a manner that does not expose the interior of his home to view,

exit the dwelling, and close the door. But they must give him an opportunity to come to the door. *See Banks*, 540 U.S. at 38-39. Here, by knocking but failing to announce their purpose, the agents gave Weaver no opportunity to protect the privacy of his home.

The government also argues that even if Weaver had surrendered himself, in this particular case the agents would nonetheless have been able to make the observations that justified the search warrant. The record does not support that conclusion. Because the federal agents violated the knock-and-announce rule, Weaver was not given a chance to surrender himself peacefully at the doorway of his unit or in the hallway of his building. Instead, he struggled with officers who pushed their way inside and eventually overpowered him in order to effectuate the arrest. The record does not reveal how much access to the apartment that struggle gave the agents beyond what they otherwise would have had. It is also unclear whether, given the layout of Weaver's apartment and the location of the drugs, the officers would have been able to see and smell the marijuana plants from the threshold of his unit if Weaver had opened the door and surrendered himself there.

The only evidence in the record is that agents were not able to observe the drugs until they had entered Weaver's apartment: An agent executing the warrant testified that "[a]s soon as [he] went in the door, [he] smelled the fresh marijuana," and that after he entered the apartment and looked to his left he saw the marijuana. The record does not specify how far into the apartment the agent went before he saw the marijuana, how much farther into the apartment he was able to enter as a result of the struggle to subdue Weaver, or whether the marijuana was visible from the doorway. The government has thus failed to create a record that would

enable us to conclude that the agents would have made the same observations had they knocked, announced, and arrested Weaver on his threshold. Nor has the government argued that, even if Weaver had surrendered himself at the threshold of his apartment, the drugs would have been observed during a protective sweep of the areas adjacent to where Weaver was arrested.

\* \* \*

For all of the foregoing reasons, we conclude that the exclusionary rule is the appropriate remedy for knock-and-announce violations in the execution of arrest warrants at a person's home. The parties agree that the officers did not satisfy the rule's dictates here. The district court should have excluded the fruits of that constitutional violation. Consequently, we reverse the district court's denial of Weaver's suppression motion and remand for further proceedings.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, dissenting: I am convinced the exclusionary rule does not apply to a violation of the Fourth Amendment knock-and-announce requirement, period. I had thought that was plain from the U.S. Supreme Court's decision in *Hudson v. Michigan*, 547 U.S. 586 (2006). My colleagues conclude, however, that because *Hudson* involved a knock-and-announce violation during the execution of a *search* warrant, it is limited to that context and does not apply to a knock-and-announce violation during the execution of an *arrest* warrant. Yet, nothing in *Hudson* supports their view. *Hudson* held that *all* violations of the knock-and-announce requirement are exempt from the exclusionary rule and my colleagues' attempt to limit its reasoning to search warrants is unpersuasive. Indeed, the majority, concurrence and dissent in *Hudson* would all be surprised by my colleagues' narrow reading.[1] As would every member of this Court in 2006,[2] our sister circuits,[3]

---

[1] *See Hudson*, 547 U.S. at 590 (defining question presented broadly as "whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement"); *id.* at 588 (same); *id.* at 603–04 (Kennedy, J., concurring in part and concurring in judgment); *id.* at 604 (Breyer, J., dissenting) ("[T]he Fourth Amendment normally requires law enforcement officers to knock and announce their presence before entering a dwelling. Today's opinion holds that evidence seized from a home following a violation of this requirement need not be suppressed.").

[2] *See United States v. Southerland*, 466 F.3d 1083, 1083 (D.C. Cir. 2006) ("*Hudson*'s holding [is] that the exclusionary rule did not apply to Fourth Amendment knock-and-announce violations"), *opinion unanimously endorsed by* Irons *footnote*, 466 F.3d at 1084 n.1.

[3] *See, e.g.*, *United States v. Pelletier*, 469 F.3d 194, 201 (1st Cir. 2006) ("*Hudson* applies with equal force in the context of an arrest warrant."); *United States v. Smith*, 526 F.3d 306, 311 (6th Cir. 2008) ("Nor, contrary to [defendant's] suggestion, does *Hudson* apply only when the officers have a search warrant."); *United States v. Ankeny*, 502 F.3d 829, 835–36 (9th Cir. 2007) ("[W]e decline to limit *Hudson* so narrowly to its facts."); *United States v. Cos*, 498 F.3d 1115, 1132 n.3 (10th Cir. 2007) (*Hudson* "held that, when a particular *kind of mistake* is made by police officers themselves—a violation of the Fourth Amendment's knock-and-announce

scholars on both sides of the exclusionary-rule debate[4] and even Hudson's lawyer.[5]  The majority opinion in this case

---

requirement—the exclusionary rule is not applicable" (emphasis added)); *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013) ("*Hudson . . .* holds that exclusion is not an appropriate remedy for violations of the knock-and-announce rule."); *see also State v. Cable*, 51 So. 3d 434, 441 (Fla. 2010) (stating, in arrest-warrant case, that "[u]nder *Hudson*, it is clear that the exclusionary rule does not apply to Fourth Amendment knock-and-announce violations"); *Berumen v. State*, 182 P.3d 635, 637 (Alaska Ct. App. 2008) (same); *State v. Marcum*, No. 04-CO-66, ¶ 15, 2006 WL 3849861, at *3 (Ohio Ct. App. Dec. 28, 2006) ("Based on *Hudson*, no evidence should have been suppressed due to a violation of the knock-and-announce rule" during execution of arrest warrant); *In re Frank S.*, 47 Cal. Rptr. 3d 320, 324 (Ct. App. 2006) ("Defendant's contention that *Hudson* applies only where the police have a search warrant is not persuasive.  *Hudson* held that a violation of the knock-and-announce rule does not justify application of the exclusionary rule.  The rule turns on the nature of the constitutional violation at issue, not the nature of the police's authority for entering the home." (citations omitted)).

[4]  *See, e.g.*, James J. Tomkovicz, Hudson v. Michigan *and the Future of Fourth Amendment Exclusion*, 93 IOWA L. REV. 1819, 1839–41 & n.111 (2008) (explaining why *Hudson* cannot be limited to search warrants); 1 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 1.6(h) & n.165 (5th ed. 2014) ("Whatever one might think of *Hudson*'s fruit-of-the-poisonous-tree holding, the majority's . . . alternate deterrence/costs holding . . . is open to broader application . . . .  Applying only a fruits analysis, it would seem that notwithstanding *Hudson* there would be instances in which items not named in the warrant would be deemed the fruit of a premature entry or an entry without notice because absent that violation the evidence would not have been discovered.  But . . . it is to be doubted that it could likewise be said that there is a greater need for deterrence of those knock-and-announce violations that serendipitously produce such evidence." (citation and some footnotes omitted)); 2 DRUG ABUSE & THE LAW SOURCEBOOK § 9:14 (2014) ("The [*Hudson*] Court's . . . balancing [of] the deterrence benefit against the social cost of exclusion[] is likely to lead to the same result regardless of whether the entry is to serve a search warrant or an arrest warrant."); Mark A. Summers, *The Constable Blunders but Isn't Punished: Does* Hudson v. Michigan'*s Abolition of the Exclusionary Rule Extend Beyond Knock-and-Announce Violations?*, 10 BARRY L. REV. 25,

will not only create a direct circuit split, *see United States v. Jones*, 523 F.3d 31, 36 (1st Cir. 2008), but it will "produc[e] preventable violence against officers," "releas[e] dangerous criminals into society" and generate a "flood" of burdensome litigation. *Hudson*, 547 U.S. at 595; *see also infra* pp.19–21. Accordingly, I respectfully dissent.

## I. BACKGROUND

The knock-and-announce requirement arises whenever a police officer seeks to enter someone's residence without permission. *See Sabbath v. United States*, 391 U.S. 585, 589–90 (1968). Before making such entry, an officer must knock, announce his authority and purpose ("Police! I have a warrant!") and wait a reasonable time for an answer. *See Miller v. United States*, 357 U.S. 301, 308–09 (1958); *United States v. Banks*, 540 U.S. 31, 41 (2003). The requirements, not surprisingly, are subject to exceptions. *See, e.g.*, *Miller*, 357 U.S. at 310 (police need not announce purpose if defendant already knows they are there to arrest him). Moreover, an officer can bypass the knock-and-announce requirement entirely if he has a "reasonable suspicion of exigency or futility." *Banks*, 540 U.S. at 37 n.3. Exigent

37 (2008) ("Because the[] interests [identified in *Hudson*] are the same in every knock-and-announce rule case, there are no knock-and-announce violations where applying the exclusionary remedy would be justified."); John B. Rayburn, Note, *What Is "Blowing in the Wind"? Reopening the Exclusionary Rule Debate*, 110 W. VA. L. REV. 793, 823–24 (2008) ("extend[ing] *Hudson* to the execution of arrest warrants . . . seem[s] to be elementary and non-problematic").

5  David A. Moran, *The End of the Exclusionary Rule, Among Other Things: The Roberts Court Takes on the Fourth Amendment*, 2006 CATO SUP. CT. REV. 283, 283 ("[In] my 5-4 loss in *Hudson v. Michigan* . . . , the Court held that when the police violate the Fourth Amendment 'knock and announce requirement' the normal Fourth Amendment remedy, exclusion of the evidence found after the violation, does not apply.").

circumstances include anticipated physical violence, apprehending an escaped prisoner and preventing the destruction of evidence. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 406 (2006); *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995); *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

The United States inherited the knock-and-announce rule from the English common law. *See Hudson*, 547 U.S. at 589; *see also Miller*, 357 U.S. at 313 (knock-and-announce requirement is "a tradition embedded in Anglo-American law"). It is usually traced to *Semayne's Case*—a 17th century decision from the King's Bench—although its origins may be more ancient still. *See Wilson*, 514 U.S. at 931–32 & n.2; *see also Semayne's Case*, (1604) 77 Eng. Rep. 194 (K.B.) 196; 5 Co. Rep. 91 a, 91 b (citing 1275 statute and noting it was then "but an affirmance of the common law"). For federal law-enforcement officers, the knock-and-announce requirement has been mandated by statute since 1917. *See* Act of June 15, 1917, tit. XI, § 8, 40 Stat. 229. The current version provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, *after notice of his authority and purpose*, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (emphasis added).[6] By its terms, section 3109 governs the execution of "search warrant[s]" only. *See*

---

[6] Section 3109 also applies, by reference, to local law-enforcement officers operating in the District of Columbia. *See* D.C. CODE § 23-524(a) ("An officer executing a warrant directing a search of a dwelling house or other building or a vehicle shall execute such warrant in accordance with section 3109 of Title 18, United States Code.").

*Southerland*, 466 F.3d at 1085. And, under the common law, the knock-and-announce requirement "had not been extended conclusively" to the arrest context at the Founding or even through the Civil War. *See Wilson*, 514 U.S. at 935. Nevertheless, courts "gradually" extended the common-law requirement to arrests as well. *Id.* This Court, for example, did so in *Accarino v. United States*, 179 F.2d 456 (D.C. Cir. 1949).

In 1995, the Supreme Court clarified in *Wilson v. Arkansas* that the knock-and-announce requirement is not only a creature of statute and common law, but also a requirement of the U.S. Constitution. *See* 514 U.S. at 934. Specifically, the Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures," U.S. CONST., amend. IV, and the knock-and-announce requirement "forms a part of the Fourth Amendment reasonableness inquiry," *Wilson*, 514 U.S. at 930. The *Wilson* Court declined, however, to decide the *remedy* for a knock-and-announce violation, leaving that question for another day. *See id.* at 937 n.4.

Nevertheless, this Court had already answered the question. Long before *Wilson*, we determined that the knock-and-announce requirement was grounded in the Fourth Amendment. *See, e.g.*, *McKnight v. United States*, 183 F.2d 977, 978 (D.C. Cir. 1950). And we applied the exclusionary rule to evidence obtained in violation of both the constitutional and statutory knock-and-announce requirements. *See, e.g.*, *Gatewood v. United States*, 209 F.2d 789, 791–92 (D.C. Cir. 1953); *Woods v. United States*, 240 F.2d 37, 39–40 (D.C. Cir. 1956). Yet, our cases were largely a product of the times. The Supreme Court's decisions during that era suggested that, once a violation of the Fourth Amendment occurred, the fruits of that violation must

*necessarily* be suppressed. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 654 (1961) ("*all* evidence obtained by an unconstitutional search and seizure [is] inadmissible in a federal court" (emphasis added) (citing *Elkins v. United States*, 364 U.S. 206, 213 (1960))); *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568–69 (1971) (because "petitioner's arrest violated his constitutional rights under the Fourth and Fourteenth Amendments[,] the evidence secured as an incident thereto should have been excluded").

Those days, however, are long gone. "Subsequent case law" from the Supreme Court "rejected [a] reflexive application of the exclusionary rule." *Arizona v. Evans*, 514 U.S. 1, 13 (1995); *see also Hudson*, 547 U.S. at 591 ("Expansive dicta in *Mapp* . . . suggested wide scope for the exclusionary rule. . . . But we have long since rejected that approach." (citations omitted)). Instead, suppression is a "last resort, not [a] first impulse." *Hudson*, 547 U.S. at 591. Given its "costly toll upon truth-seeking and law enforcement objectives," the party "urging application" of the exclusionary rule shoulders a "high" burden. *Pa. Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364–65 (1998) (quotation marks omitted); *see also Davis v. United States*, 131 S. Ct. 2419, 2427 (2011) ("[Exclusion's] bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort." (citation and quotation marks omitted)).

The Supreme Court has recognized several exceptions to the exclusionary rule. The rule does not apply if the constitutional violation is not the but-for cause of the discovery of the evidence, *see Murray v. United States*, 487 U.S. 533, 537 (1988); *Nix v. Williams*, 467 U.S. 431, 444 (1984), or if the causal link is too "attenuated," *Wong Sun v.*

*United States*, 371 U.S. 471, 487 (1963). Additionally, over the last forty years, the Supreme Court has repeatedly exempted whole categories of cases from the exclusionary rule's reach. *See, e.g.*, *Davis*, 131 S. Ct. at 2423–24 (search compliant with subsequently overruled precedent); *Illinois v. Krull*, 480 U.S. 340, 349 (1987) (search compliant with statute later deemed unconstitutional); *Herring v. United States*, 555 U.S. 135, 137 (2009) (violation caused by police employee's clerical error); *Evans*, 514 U.S. at 16 (violation caused by court employee's clerical error); *Massachusetts v. Sheppard*, 468 U.S. 981, 990–91 (1984) (violation caused by magistrate judge's clerical error); *United States v. Leon*, 468 U.S. 897, 922 (1984) (evidence obtained in reasonable reliance on defective search warrant); *Scott*, 524 U.S. at 359 (parole revocation hearings); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (civil deportation hearings); *Stone v. Powell*, 428 U.S. 465, 494–95 (1976) (federal habeas review); *United States v. Calandra*, 414 U.S. 338, 354 (1974) (grand jury proceedings); *United States v. Havens*, 446 U.S. 620, 627 (1980) (evidence used to impeach defendant); *United States v. Janis*, 428 U.S. 433, 460 (1976) (evidence seized by state police and used in federal civil proceedings). In doing so, the Supreme Court applies a balancing test: the Court will not extend the exclusionary rule to a particular context unless the deterrence benefits outweigh the societal costs. *See, e.g.*, *Leon*, 468 U.S. at 909–10.

*Hudson v. Michigan* falls neatly within this line of cases. In *Hudson*, the Supreme Court finally answered the question it had left unanswered in *Wilson*: namely, "whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement." *Hudson*, 547 U.S. at 590. The Court said "no" for two independent reasons. First, a knock-and-announce violation is too "attenuated" from the seizure of evidence to warrant exclusion. *See id.* at 591–94. Second,

and "[q]uite apart from the requirement of unattenuated causation," *id.* at 594, under the exclusionary-rule balancing test, the deterrence benefit of suppression does not outweigh the social costs. *See id.* at 594–99.

Shortly after *Hudson* was decided, we had the opportunity to determine its reach. In *United States v. Southerland*, we assessed whether "*Hudson*'s holding that the exclusionary rule did not apply to Fourth Amendment knock-and-announce violations" also applies to statutory knock-and-announce violations under section 3109. 466 F.3d at 1083. We concluded that it does. *See id.* at 1086. We noted that the standards governing section 3109, the Fourth Amendment and the common law have "merged" so that "[t]here is now one uniform knock-and-announce rule." *Id.* at 1085–86; *see also Ramirez*, 523 U.S. at 73 ("§ 3109 codifies the common law in this area, and the common law in turn informs the Fourth Amendment"). Unsurprisingly then, "each of the reasons[7] *Hudson* gave for not applying the exclusionary rule to knock-

---

7 The *Southerland* Court identified the *Hudson* "reasons" as follows: that the knock-and-announce requirement does not protect an individual's interest in shielding "potential evidence from the government's eyes," *Hudson*, 126 S. Ct. at 2165; that "imposing th[e] massive remedy" of suppression "for a knock-and-announce violation would generate a constant flood of alleged failures to observe the rule," *id*. at 2165–66; that questions about whether the police waited long enough before entering would be "difficult for the trial court to determine and even more difficult for an appellate court to review," *id*. at 2166; that any deterrent value from suppressing evidence in these cases would not be "worth a lot," *id*.; that civil damage actions would still provide some deterrence, *id*. at 2166–68; and that "[a]nother development over the past half-century that deters civil-rights violations is the increasing professionalism of police forces, including a new emphasis on internal police discipline," *id*. at 2168.

466 F.3d at 1084 (alterations in original).

and-announce violations of the Fourth Amendment applies equally to violations of § 3109." *Southerland*, 466 F.3d at 1084. *Southerland* acknowledged that earlier Supreme Court precedent appeared to apply the exclusionary rule to violations of section 3109. *See id.* at 1084–85 (discussing *Miller*, 357 U.S. 301, and *Sabbath*, 391 U.S. 585). But those cases did not technically apply section 3109 because they dealt with knock-and-announce violations in connection with *arrests*, not search warrants. *Id.* at 1085. More importantly, to the extent the arrest cases may have required exclusion, we concluded they were overruled by *Hudson*. *See id.* at 1085–86; *see also id.* at 1086 ("[W]e think it plain that *Hudson*, not *Miller* and *Sabbath*, now must control. Not only is *Hudson* the Court's most recent pronouncement about whether evidence should be excluded as a remedy for knock-and-announce violations, but it is also the Supreme Court's only thorough analysis of the issue.") Accordingly, in *Southerland*, we held that the exclusionary rule does not apply to violations of section 3109 and expressly overruled contrary circuit precedent. *See id.* at 1086, 1084 n.1.

## II. ANALYSIS

Weaver contends—and my colleagues agree—that *Hudson v. Michigan* is limited to search warrants and, because the knock-and-announce violation here occurred during the execution of an *arrest* warrant, the exclusionary rule is back in play. Yet I find the attempt to distinguish *Hudson* completely unpersuasive. *Hudson*'s holding contains no search-warrant limitation and its reasoning applies equally to searches and arrests.

### A. *HUDSON*'S HOLDING

*Hudson* involved a knock-and-announce violation that occurred during the execution of a search warrant. *See* 547

U.S. at 588. That fact does not mean, however, that *Hudson*'s holding is limited to the search-warrant context:

> Every case is "limited to its facts," if by that phrase one means that the court based its judgment on the facts presented to it. But most cases are also decided with reference to some more general normative principle which extends beyond the specific circumstances of the case before the court. Indeed, it is the existence of such broader norms which distinguishes a decision which is principled and rational from one which is *ad hoc* and arbitrary.

*Robinson v. Diamond Hous. Corp.*, 463 F.2d 853, 862 (D.C. Cir. 1972). Here, for instance, the *Hudson* Court framed the issue broadly. *See* 547 U.S. at 590 ("The issue here is . . . whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement."); *id.* at 588 ("We decide whether violation of the 'knock-and-announce' rule requires the suppression of all evidence found in the search."). These statements are not "pluck[ed]" out of context, Maj. Op. 12; they are the two instances in which the *Hudson* Court framed the question presented.[8] And nowhere in the opinion

---

[8] My colleagues emphasize the word "search" in the *Hudson* Court's statement that "[w]e decide whether violation of the 'knock-and-announce' rule requires the suppression of all evidence found in the *search*." *Hudson*, 547 U.S. at 588 (emphasis added). Their italicization is unhelpful. The Court said "search," not "search warrant." Whenever the police enter a residence to execute an arrest warrant and seize evidence incident to arrest or in plain view, a "search" occurs.

My colleagues also note that the *Hudson* Court "relied on . . . precedents concerning search warrants." Maj. Op. 13. That is unsurprising, as the "[c]ases acknowledging a need to knock and announce typically involve the execution of search warrants." Tomkovicz, *supra*, at 1837 n.92 (collecting cases). In any event, the *Hudson* Court did not rely *exclusively* on such precedents. Its attenuation analysis, for example, was primarily grounded in *New York v. Harris*, 495 U.S. 14 (1990)—a case

did the *Hudson* Court leave open the possibility of a different outcome in the arrest context or draw any distinction between searches and arrests.

Such a distinction would make little sense conceptually. There is but "one uniform knock-and-announce rule." *Southerland*, 466 F.3d at 1086. The rule governs *all* unauthorized entries into a residence, whether the police have a search warrant, an arrest warrant or no warrant at all. *See Miller*, 357 U.S. at 306, 309. There is not one knock-and-announce requirement for search warrants and another knock-and-announce requirement for arrest warrants. Indeed, far from sharply distinguishing between arrests and searches, the case law expressly conflates them. *See id.* (knock-and-announce violation of federal officer "to execute [an] arrest without [a] warrant must be tested by criteria identical with those" governing "entry to execute a search warrant" and "arrest . . . by virtue of a warrant"); *Sabbath*, 391 U.S. at 588 (same). *See also generally Michigan v. Summers*, 452 U.S. 692, 704 (1981) (downplaying "the distinction between a search warrant and an arrest warrant"); *Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986) (same). Indeed, the First Circuit has expressly rejected the distinction my colleagues draw here. *See Pelletier*, 469 F.3d at 201 ("*Hudson* applies with equal force in the context of an arrest warrant."); *Jones*, 523 F.3d at 36 ("In the wake of *Hudson*, we have recognized the absence of an exclusionary rule for knock-and-announce violations, provided the police have a valid arrest warrant . . . and reason to believe the target is inside.").[9] And other circuits have

involving a warrantless residential arrest. *See Hudson*, 547 U.S. at 593. It relied on *Miller* and *Sabbath* as well. *See id.* at 594.

[9] Before *Hudson*, the Seventh Circuit had likewise concluded that the exclusionary rule does not apply to knock-and-announce violations, *see United States v. Langford*, 314 F.3d 892, 894–95 (7th Cir. 2002), and had extended that holding to the arrest-warrant context, *see United States v.*

declined invitations to limit *Hudson* to its facts. *See, e.g.*, *Smith*, 526 F.3d at 311 ("Nor, contrary to [the defendant's] suggestion, does *Hudson* apply only when the officers have a search warrant. . . . [T]he interests served by the knock-and-announce rule . . . 'have nothing to do with the seizure of the evidence,' and nothing to do with whether the Fourth Amendment required the officers to obtain a warrant. There is nothing about the presence of a warrant that increases the value of deterring knock-and-announce violations, which the Court tells us 'is not worth a lot,' or that mitigates the 'substantial social costs' of suppressing the evidence." (citations omitted)); *Ankeny*, 502 F.3d at 835–36 ("[W]e decline to limit *Hudson* so narrowly to its facts. The Supreme Court made it clear that, because the knock-and-announce rule protects interests that 'have nothing to do with the seizure of . . . evidence, the exclusionary rule is inapplicable' to knock-and-announce violations.").

Moreover, we do not interpret *Hudson* on a blank slate. As discussed, in *Southerland*, we considered whether *Hudson* overruled two Supreme Court cases—*Miller* and *Sabbath*—both of which involved knock-and-announce violations in the *arrest* context. In *Miller* and *Sabbath*, the police officers arrested the defendants in their respective residences without an arrest warrant and without complying with the knock-and-announce requirement. *See Sabbath*, 391 U.S. at 586–87; *Miller*, 357 U.S. at 303–04. The Supreme Court held in both cases that the knock-and-announce violations required

*Smith*, 171 F. App'x 516, 519 (7th Cir. 2006). It has apparently not departed from this position post–*Hudson*. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) ("The exclusionary rule is used in only a subset of all constitutional violations—and excessive force in making an arrest or seizure is not a basis for the exclusion of evidence. . . . *Cf. Hudson v. Michigan*, 547 U.S. 586 (2006) (violation of constitutional knock-and-announce rule does not justify exclusion)." (one citation omitted)).

suppression of the evidence found inside. *See Sabbath*, 391 U.S. at 586; *Miller*, 357 U.S. at 314. In *Southerland*, however, we concluded that *Hudson* not only governed these arrest cases—it *overruled* them. *See Southerland*, 466 F.3d at 1085–86. *Southerland* therefore held, directly contrary to my colleagues' position here, that *Hudson* cannot be read as governing search warrants only. And *Miller* and *Sabbath* are no "obstacle" to my position, Maj. Op. 21, because, according to the Court, they were overruled by *Hudson*. *See Southerland*, 466 F.3d at 1085–86. Although a distinction could be drawn between a warrantless arrest (*Miller* and *Sabbath*) and the execution of an arrest warrant (this case), the distinction *undercuts* my colleagues' position. If, as we said in *Southerland*, the exclusionary rule does not apply to a knock-and-announce violation when the police have *no* arrest warrant, then it plainly is inapplicable when the police have one. *See Keiningham v. United States*, 287 F.2d 126, 129 (D.C. Cir. 1960) ("[I]t is inconceivable that less should be required of an officer acting without a warrant than is required of him under a valid warrant."). In sum, I believe *Southerland*'s interpretation of *Hudson*'s scope directly refutes the search/arrest distinction my colleagues draw. *Southerland*'s analysis was not dicta and it was unanimously endorsed by the full Court via *Irons* footnote; accordingly, we should follow it here. *See United States v. Emor*, 785 F.3d 671, 682 (D.C. Cir. 2015) ("[W]e cannot overrule a prior panel's decision, except via an *Irons* footnote or en banc review.").

## B. *HUDSON*'S REASONING

Even if *Hudson* did not directly control this case (on its own terms and as interpreted in *Southerland*), its reasoning applies with equal force to the arrest-warrant context. The *Hudson* Court deemed the exclusionary rule inapplicable to

knock-and-announce violations on two alternative grounds: attenuation and cost-benefit balancing. Both grounds are holdings and so Weaver and my colleagues must successfully distinguish them both. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*."). In my view, they successfully distinguish neither.

### i. Attenuation

Weaver spends most of his brief explaining why here, unlike in *Hudson*, the knock-and-announce violation was the but-for cause of the discovery of the evidence. His argument goes as follows:

- Because the ATF officers violated the knock-and-announce requirement, Weaver did not have an opportunity to surrender himself at the door.

- Because Weaver did not surrender himself at the door, the officers forced their way inside.

- Because they were inside Weaver's apartment, the officers were able to see the marijuana in plain view.

- Based on their plain-view observations, the officers obtained a search warrant.

- In executing the search warrant, the officers obtained the evidence ultimately used to convict Weaver.

Stated in reverse, Weaver believes the search warrant was invalid because the plain-view observations were invalid because the entry was invalid because the police did not knock and announce.

Even assuming Weaver's causation theory is correct, he is wrong to suggest that the absence of but-for causation is the "core" of *Hudson*. Appellant's Br. 21. On the contrary, the absence of but-for causation comprised all of two sentences of the Court's opinion. *See Hudson*, 547 U.S. at 592. Indeed, the *Hudson* Court expressly downplayed the significance of but-for causation. *See id.* ("Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression."); *id.* ("[E]xclusion may *not* be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." (emphasis added)); *id.* ("*[E]ven if* the illegal entry here could be characterized as a but-for cause of discovering what was inside, we have never held that evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police." (emphasis added) (quotation marks omitted)); *id.* ("[B]ut-for cause, or causation in the logical sense alone, can be too attenuated to justify exclusion." (quotation marks and citation omitted)); *id.* at 593 ("Attenuation . . . occurs when, *even given* a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." (emphasis added)).[10] The real core of *Hudson*'s attenuation

---

[10] At times, my colleagues appear to agree with Weaver that *Hudson* was primarily about the absence of but-for causation. *See* Maj. Op. 3–4, 10. They emphasize Justice Kennedy's concurrence, in which he said "the failure to wait at the door cannot properly be described as having caused the discovery of evidence." *Hudson*, 547 U.S. at 604 (Kennedy, J., concurring in part and concurring in judgment). His concurrence ultimately does not support their view, however, as he also stated more broadly that suppression is unwarranted in the "context of the knock-and-announce requirement" writ large. *Id.* at 603; *see also id.* at 604 ("[E]xtension [of the exclusionary rule to knock-and-announce violations] *also* would have significant practical implications, adding to the list of issues requiring resolution at the criminal trial questions such as whether police officers entered a home after waiting 10 seconds or 20." (emphasis

analysis is the conclusion that "[t]he interests protected by the knock-and-announce requirement . . . do not include the shielding of potential evidence from the government's eyes." *Id.* The interests that the knock-and-announce requirement does protect—safety, property and dignity—"have nothing to do with the seizure of the evidence." *Id.* at 594.[11]

---

added)). More importantly, he fully joined "Parts I through III" of the majority opinion in *Hudson* (the attenuation and cost-benefit balancing holdings). *See id.* at 604. As a lower court, we are bound to follow the Supreme Court's majority opinion, not the concurrence of a single Justice. *See Hansford v. United States*, 303 F.2d 219, 225 (D.C. Cir. 1962) (en banc); *see also United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring in denial of rehearing en banc) ("Justices who join the majority may of course express additional thoughts in a concurrence, but concurrences do not bind lower courts in cases where there is a majority opinion."). Ultimately, my colleagues agree that we must "employ *Hudson*'s legal framework in considering whether the exclusionary remedy is appropriate here," including its attenuation and cost-benefit balancing holdings. Maj. Op. 12.

[11] My colleagues suggest that the *Hudson* Court limited its attenuation analysis to the search-warrant context in noting that "the knock-and-announce rule has never protected . . . one's interest in preventing the government from seeing or taking evidence *described in a warrant*." 547 U.S. at 594 (emphasis added). Elsewhere, however, the Court made the same point without any "search warrant" limitation. *See id.* at 593 ("The interests protected by the knock-and-announce requirement . . . do not include the shielding of potential evidence from the government's eyes."); *accord Smith*, 526 F.3d at 311 ("Nor, contrary to [defendant's] suggestion, does *Hudson* apply only when the officers have a search warrant. The explanations given by *Hudson* are not confined to situations in which the officers violate the knock-and-announce rule after obtaining a warrant . . . ."). As one commentator puts it:

> *Hudson*'s holding [cannot be confined] to "evidence described in a warrant" . . . . The purposes of the knock-and-announce rule identified by the Court . . . did not include shielding undescribed items from the authorities. Surely, this was no oversight and is more telling than the limiting language used to describe what the rule does not safeguard. The explanation for

17

Weaver contends, and my colleagues agree, that the knock-and-announce requirement protects another interest: the privacy interest in keeping the police out of one's home. *See* Maj. Op. 15–20. The dissent in *Hudson* made precisely the same argument. *See* 547 U.S. at 620–21 (Breyer, J., dissenting) ("[The majority] does not fully describe the constitutional values, purposes, and objectives underlying the knock-and-announce requirement. That rule . . . [also] protects the occupants' privacy by assuring them that government agents will not enter their home without complying with those requirements . . . ."). Yet, according to the *Hudson* majority, the only "privacy" interests protected by the knock-and-announce requirement are "those elements . . . that can be destroyed by a sudden entrance," *i.e.*, the ability to "get out of bed," "pull on clothes" and "prepare . . . for the entry of the police." *Id.* at 594 (majority op.); *see also id.* at 593 ("[C]ases excluding the fruits of unlawful warrantless searches say *nothing* about the appropriateness of exclusion to vindicate the interests protected by the knock-and-announce requirement. . . . The interests protected by the knock-and-announce requirement are quite different." (citing, *inter alia*, *Weeks*, 232 U.S. 383; *Mapp*, 367 U.S. 643) (emphasis added)). As a lower court, we are not free to contradict the Supreme Court's exhaustive description of the interests protected by the knock-and-announce requirement. *See Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009)

---

the Court's reference to "evidence described in a warrant" may well be that the evidence in *Hudson* was of that variety. In any event, it is inconceivable that the majority would have ordered suppression of the gun if the officers had possessed a warrant only for contraband narcotics and had seized the firearm in 'plain view' during a lawful search. And the cost-benefit balance struck in *Hudson* would be no different for evidence that had not been specified in a search warrant.

Tomkovicz, *supra*, at 1840 & n.105 (citation and some footnotes omitted).

("Vertical stare decisis—both in letter and in spirit—is a critical aspect of our hierarchical Judiciary headed by 'one supreme Court.' " (quoting U.S. CONST., art. III, § 1)).

Of course, the *arrest-warrant* requirements—that a warrant be issued by a neutral magistrate based on probable cause and that the police have reason to believe the suspect is present at the described locale, *Payton v. New York*, 445 U.S. 573, 602–03 (1980)—protect the privacy interest that Weaver identifies. *See id.* at 589–90. But he concedes that those requirements were complied with here. *See* Appellant's Reply Br. 5 n.2. The ATF officers had a valid arrest warrant and therefore had the right to enter Weaver's apartment to effectuate his arrest. *See Payton*, 445 U.S. at 602–03. The knock-and-announce violation he identifies, standing alone, does not implicate his privacy interest in keeping the police at bay from his residence and, thus, suppression would not vindicate it. *See Hudson*, 547 U.S. at 593; *see also United States v. Ceccolini*, 435 U.S. 268, 279 (1978) (for exclusionary rule to apply, "[t]he penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve"). And arrest-warrant requirements, like search-warrant requirements, are sufficient to protect the privacy interest my colleagues identify. *See Payton*, 445 U.S. at 602–03 ("[A]n arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law."); *Summers*, 452 U.S. at 704 (same). In sum, *Hudson*'s attenuation analysis exempts from the

exclusionary rule a knock-and-announce violation committed during the execution of an arrest warrant.

### ii. Balancing Test

Even if *Hudson*'s attenuation analysis were limited to search warrants, the Court's balancing-test analysis is assuredly not. The *Hudson* Court concluded that the social costs of applying the exclusionary rule to knock-and-announce violations far exceed the deterrence benefits. *See* 547 U.S. at 599. This Court is not free to recalibrate the scales. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Faithfully adhering to *Hudson*'s cost-benefit analysis, I think the exclusionary rule plainly does not apply to arrest warrants as well. Indeed, the *Hudson* Court's balancing analysis in no way relied on the existence *vel non* of a search warrant.

The costs identified in *Hudson* are exactly the same here. In both the search-warrant and arrest-warrant contexts, suppression will "releas[e] dangerous criminals into society" by excluding "relevant incriminating evidence." *Hudson*, 547 U.S. at 595. It will also drain judicial resources by "generat[ing] a constant flood of alleged failures to observe the [knock-and-announce] rule," which claims require "extensive litigation" over "difficult," fact-specific inquiries like "what constituted a 'reasonable wait time' " and whether an exception to the knock-and-announce requirement applied. *Id.*; *see also id.* at 589–90 (explaining that knock-and-announce requirement "is not easily applied" and that "it is not easy to determine precisely what officers must do"). And, in both contexts, the "massive" consequences of suppression will encourage police officers to "wait longer than the law

requires," causing "preventable violence against officers" and "the destruction of evidence." *Id.* at 595. Indeed, Weaver never contends otherwise.

My colleagues claim that applying the exclusionary rule in the arrest-warrant context will not trigger a flood of burdensome litigation because "officers rarely violate the knock-and-announce rule." Maj. Op. 29. But they miss the point made in *Hudson*. Whether or not a knock-and-announce violation *in fact* occurs, every criminal defendant will claim it did because "[t]he cost of entering this lottery would be small, but the jackpot enormous: suppression of all evidence, amounting in many cases to a get-out-of-jail-free card." *Hudson*, 547 U.S. at 595. Thus, in every case in which the police find evidence during execution of an arrest warrant, the defendant can and will claim that they violated the knock-and-announce requirement by, for example, not waiting long enough before entering. *See id.* It is the mere *allegation* of a knock-and-announce violation, regardless whether it ultimately has merit, that will require "extensive litigation" via suppression hearings. *Id.* And the burdens on the judiciary in adjudicating these claims will be even greater than usual:

> Unlike the warrant or *Miranda* requirements, compliance with which is readily determined (either there was or was not a warrant; either the *Miranda* warning was given, or it was not), what constituted a "reasonable wait time" in a particular case (or, for that matter, how many seconds the police in fact waited), or whether there was "reasonable suspicion" of the sort that would invoke [an] exception[ to the knock-and-announce requirement], is difficult for the trial court to determine and even more difficult for an appellate court to review.

*Id.* At bottom, my colleagues argue with, rather than distinguish, the High Court's analysis in *Hudson*.

My colleagues' decision will also endanger law-enforcement officers in the same way that *Hudson* predicted. The point made in *Hudson* is not that the exclusionary rule will *deter* police officers from violating the knock-and-announce requirement but that it will lead to *over*-deterrence:

> Another consequence of the incongruent remedy [of applying the exclusionary rule to knock-and-announce violations] would be police officers' refraining from timely entry after knocking and announcing. As we have observed, the amount of time they must wait is necessarily uncertain. If the consequences of running afoul of the rule were so massive, officers would be inclined to wait longer than the law requires—producing preventable violence against officers . . . .

*Id.* (citation omitted). After today, this risk and uncertainty will confront every police officer who executes an arrest warrant in the District of Columbia.

No matter the costs identified in *Hudson*, my colleagues ultimately believe they are outweighed by an alleged increase in deterrence benefits in the arrest-warrant context. *See* Maj. Op. 27–29. Weaver contends, and my colleagues agree, that police officers have a greater incentive to violate the knock-and-announce requirement when executing arrest warrants than search warrants: if officers can enter straightaway, they can search the suspect's residence more broadly than they otherwise could. But "the value of deterrence depends upon the strength of the incentive to commit the forbidden act" and, as the *Hudson* Court reminds us, "deterrence of knock-and-announce violations is not worth a lot." 547 U.S. at 596.

Officers can already bypass the knock-and-announce requirement if they have a "reasonable suspicion" that the occupant will destroy evidence or violently resist arrest. *Id.* Moreover, once they arrest the occupant, the police can search his person and the areas within his reach, *see In re Sealed Case 96-3167*, 153 F.3d 759, 767 (D.C. Cir. 1998), and conduct a protective sweep of the home and seize any incriminating evidence in plain view, *see Maryland v. Buie*, 494 U.S. 325, 334 (1990). These searches, in turn, will often produce the probable cause necessary to obtain a full-blown search warrant.

My colleagues believe the protective sweep authorized by the Fourth Amendment is more "limited" than it in fact is. Maj. Op. 17. In the course of a residential arrest, officers can "look[] in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" without *any* probable cause or reasonable suspicion. *United States v. Ford*, 56 F.3d 265, 269 (D.C. Cir. 1995) (quoting *Buie*, 494 U.S. at 334); *see also United States v. Thomas*, 429 F.3d 282, 287 (D.C. Cir. 2005) (*Buie* authorizes suspicionless sweep of "the entirety of a small apartment"). The officers can also sweep more broadly through the residence if they have a reasonable suspicion that dangerous confederates may be present, *see Buie*, 494 U.S. at 334—a common suspicion when arresting a suspected drug dealer like Weaver, *see United States v. Cash*, 378 F.3d 745, 749 (8th Cir. 2004) ("[A]n officer arresting a suspected drug trafficker . . . is justified in conducting a *Buie* sweep out of concern that there could be individuals lurking in the other rooms who may resort to violence to thwart the arrest."). Most importantly, this latter type of sweep allows officers to go *inside* the residence even if the arrestee surrenders outside the door. *See United States v. Henry*, 48 F.3d 1282, 1284 (D.C. Cir. 1995) (*Buie* authorizes protective sweep of

residence even though "the police arrested the defendant outside rather than inside his dwelling").

According to Weaver, however, the police cannot conduct a protective sweep if the suspect surrenders himself at the door—something he has no opportunity to do when the police violate the knock-and-announce requirement. *But see Thomas*, 429 F.3d at 287; *Henry*, 48 F.3d at 1284. Yet, the notion that the police will forego knocking and announcing just to broaden their search authority defies common sense. Officers no doubt *prefer* the subject of an arrest warrant—a suspected felon, mind you—to voluntarily surrender at the door: breaking in and surprising him risks a life-threatening struggle inside. *See Miller*, 357 U.S. at 313 n.12 ("Compliance [with the knock-and-announce requirement] is . . . a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder."); *Sabbath*, 391 U.S. at 589 ("[T]he rule of announcement . . . safeguard[s] officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there."). Tellingly, Weaver cites no evidence that police officers routinely violate the knock-and-announce requirement during the execution of arrest warrants. *Cf. Hudson*, 547 U.S. at 599 ("[P]olice forces across the United States take the constitutional rights of citizens seriously. There have been wide-ranging reforms in the education, training, and supervision of police officers. . . . [M]odern police forces are staffed with professionals." (quotation marks omitted)). Indeed, my colleagues appear to agree that knock-and-announce violations during the execution of arrest warrants will be "rare[]," with or without the exclusionary rule. Maj. Op. 29. What is it, then, that needs to be deterred? *Cf. Herring*, 555 U.S. at 147–48 (emphasizing absence of "systemic error" because "the deterrent effect of suppression must be substantial," not

"marginal"); *Hudson*, 547 U.S. at 604 (Kennedy, J., concurring in part and concurring in judgment) (suppression is inappropriate due to absence of "any demonstrated *pattern* of knock-and-announce violations" (emphasis added)).[12]

Even if there were a greater need for deterrence in the arrest-warrant context, my colleagues make no attempt to explain why the "massive deterrence" of the exclusionary rule is required, given the availability of potential civil liability and internal police discipline. *Hudson*, 547 U.S. at 596. If a federal law-enforcement officer violates the knock-and-announce requirement while executing an arrest warrant, the arrestee may file a *Bivens* action against him. *See id.* at 597. Public-interest lawyers would be willing to handle the suit, *id.* at 598; the suit would be worthwhile given the availability of attorney's fees, *id.* at 597; and the officer-defendants would not be entitled to qualified immunity, *id.* at 598. According to *Hudson*, we must "assume[]" that "civil liability is an effective deterrent." *Id.* Likewise, we must "assume" that "internal police discipline" is an adequate deterrent as well. *Id.* at 598–99. Police departments have an incentive to train their officers to follow the knock-and-announce rule in order to avoid municipal liability, *id.* at 599, and police officers have an incentive to comply for the sake of their careers, *id.*

In sum, the deterrence benefit of applying the exclusionary rule to knock-and-announce violations is not

---

[12] Elsewhere, my colleagues claim "[t]he facts of this case" demonstrate that officers will strategically violate the knock-and-announce requirement to broaden their search authority. Maj. Op. 28. Even assuming a single anecdote can ever be evidence of a larger trend, Weaver has not alleged at any stage of this litigation that the ATF officers failed to announce their purpose ("We have a warrant") in order to gain entry to his apartment. In fact, the officers knocked, announced their authority ("Police") and waited before attempting to enter—actions that make little sense if their purpose was to catch Weaver by surprise.

meaningfully greater in the arrest context than in the search context. At most, my colleagues have demonstrated that the deterrence benefit of suppression could be *somewhat* higher in the arrest-warrant context. This does not go far enough. The 1960s are over and we are no longer in the "heydays" of the exclusionary rule. *Id.* at 597. The rule is a "last resort" and there is a strong presumption *against* its application. *Id.* at 591; *Davis*, 131 S. Ct. at 2427. The mere "existence" of deterrence benefits is "not . . . a sufficient condition" for suppression. *Hudson*, 547 U.S. at 596; *see also Calandra*, 414 U.S. at 350 ("[I]t does not follow that the Fourth Amendment requires adoption of every proposal that might deter police misconduct."); *Leon*, 468 U.S. at 910 (same). Instead, "the deterrence benefits of suppression must *outweigh* its heavy costs," *Davis*, 131 S. Ct. at 2427 (emphasis added)—a condition the Supreme Court almost never finds satisfied. *See supra* p.7 (collecting cases). In *Hudson*, the Court did not say that the balance was close: it said the social costs are "considerable," the incentive to violate the knock-and-announce requirement "minimal" and the preexisting deterrences "substantial." 547 U.S. at 599. My colleagues may have added a pebble to one side of the scale but they have ignored the boulder on the other side. Applying the exclusionary rule to knock-and-announce violations in the arrest-warrant context will drain judicial resources, let guilty criminals go free and risk the lives of police officers. *See id.* at 595. Compared to these "substantial social costs," *id.* at 596, the possibility that police officers will enter homes without knocking to prevent occupants from surrendering at the door—a risk that is neither proven nor plausible—is trivial. Even if this worst-case scenario is theoretically possible, the "incremental" benefit gained from deterring it does not justify the blunderbuss remedy of suppression. *Harris*, 495 U.S. at 20. Instead, the cost-benefit analysis performed in *Hudson* renders the

exclusionary rule inapplicable to knock-and-announce violations that occur during the execution of search warrants and arrest warrants alike.

For the foregoing reasons, *Hudson v. Michigan* governs this case. I would affirm the district court's denial of Weaver's motion to suppress and, accordingly, I respectfully dissent.