# United States Court of Appeals
## For the First Circuit

No. 06-1287

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH PELLETIER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]
[Hon. David M. Cohen, U.S. Magistrate Judge]

Before

Selya and Howard, Circuit Judges,
and Smith,[*] District Judge.

Michael B. Whipple, with whom Thomas F. Hallett Law Offices
was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney
(Appellate Chief), with whom Paula D. Silsby, United States
Attorney, was on brief, for appellee.

November 28, 2006

[*]Of the District of Rhode Island, sitting by designation.

**SELYA**, **Circuit Judge**. During its last term, the Supreme Court held that a violation of the "knock and announce" rule in the course of executing a search warrant did not justify the suppression of evidence subsequently discovered. See Hudson v. Michigan, 126 S. Ct. 2159 (2006). This appeal requires us to determine whether Hudson should be extended to a knock and announce violation committed in the course of executing an arrest warrant. We conclude that the Hudson Court's reasoning mandates such an extension. That conclusion, coupled with our conclusion that the defendant's other arguments are unavailing, prompts us to affirm the judgment below.

## I. BACKGROUND

The relevant facts are assembled in the magistrate judge's recommended decision, see United States v. Pelletier, No. CRIM. 05-09, 2005 WL 1800084, at *1 (D. Me. July 27, 2005), which the district court adopted in denying the motion to suppress. We assume the reader's familiarity with this exegetic account and rehearse here only those facts that are needed to place the appeal in perspective.

On December 30, 2004, the United States Parole Commission issued an arrest warrant for multiple parole violations (all involving the use of controlled substances) directed at defendant-appellant Joseph Pelletier. Around the same time, the Maine Drug Enforcement Agency and the Topsham police department, having come

-2-

to suspect that the defendant was dealing drugs, obtained a state "no-knock" warrant authorizing the search of the defendant's home on Augusta Road in Bowdoin, Maine. Deputy United States Marshals charged with executing the federal arrest warrant coordinated their efforts with the officers assigned to execute the state search warrant.

At around 7:00 a.m. on the morning of January 21, 2005, a team of law enforcement agents arrived at the Augusta Road residence. The agents effected an entry by main force. Once inside, they encountered the defendant's girlfriend, Cheryl Sprague. As the search progressed, some of the officers questioned Sprague and her sister, Jennifer Sewall (who arrived at the house shortly after the entry). Both women disclaimed any knowledge of the defendant's whereabouts.

Officers then repaired to the Sewall residence and interviewed Jennifer's husband. He ruminated that the defendant might be at a motel in Augusta, Maine. Jennifer Sewall subsequently confirmed that the defendant was staying in room 151 at the Econo Lodge Motel.

The officers reached the motel at about 9:00 a.m. They learned that room 151 was registered in Jennifer Sewall's name. When shown a photograph, however, a maintenance man identified the defendant as the occupant. At that juncture, about six to eight officers lined up outside the room. An officer knocked loudly four

or five times in rapid succession, eliciting no response. Approximately ten to fifteen seconds after the first knock, the officer used a passkey obtained from the maintenance man to open the door. He yelled "Police!" while his comrades fanned out into the room. They found the defendant face-down on the bed.

The defendant offered no resistance as the officers handcuffed him. The room contained drug paraphernalia in plain view, including a glass crack pipe, a propane torch, steel wool, glassine baggies, and hypodermic needles. In a partially open drawer, the officers observed a thick wad of cash (later determined to aggregate $4,740) and a plastic container of an unknown substance (later determined to be heroin). The Marshals arrested the defendant for parole violations and, according to prosecution witnesses, the defendant was informed of his Miranda rights. See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).

In due course, a federal grand jury charged the defendant with a single count of possession of heroin with intent to distribute. See 21 U.S.C. § 841(a)(1). In a pretrial motion to suppress, the defendant argued that the officers' failure to comply with the knock and announce rule demanded exclusion of all subsequently gathered evidence and statements. See Wong Sun v. United States, 371 U.S. 471, 484-88 (1963) (outlawing prosecutorial use of "fruits of the poisonous tree"). As part of this argument, he asserted that the arrest warrant did not justify an entry into

his motel room; that the authorities needed to have a search warrant before seizing any items; and that his statements should be suppressed because they had been obtained involuntarily.

The district court referred the suppression motion to a magistrate judge. Following an evidentiary hearing, the magistrate judge determined that the only preserved issues were (i) the effect of the officers' noncompliance with the knock and announce rule and (ii) the alleged involuntariness of the defendant's statements.[1] He resolved both issues in the government's favor. Although the government conceded the knock and announce violation, the magistrate judge, ruling before the Supreme Court decided Hudson, found that exigent circumstances justified the failure properly to knock and announce. As to the second issue, the magistrate judge found that the police had administered appropriate Miranda warnings and that no impermissible promises or threats had been made.

Based on these findings, the magistrate judge recommended wholesale denial of the motion to suppress. The defendant objected, but the district court nonetheless embraced the recommendation and denied the motion. See United States v. Pelletier, No. CRIM. 05-09, 2005 WL 2030480, at *1 (D. Me. Aug. 23, 2005). The defendant thereafter entered a conditional guilty plea, reserving the right to appeal the suppression rulings. See Fed. R.

---

[1]In deciding what issues were live, the magistrate judge determined, among other things, that the defendant had waived any challenge to the sufficiency of the administrative warrant. This determination has not been challenged on appeal.

Crim. P. 11(a)(2). The district court sentenced the defendant as a career offender to a 151-month incarcerative term. This appeal ensued.

**II. DISCUSSION**

On appeal, the defendant advances three arguments. His flagship claim is that the officers' admitted failure to comply with the knock and announce rule rendered their entry into the motel room unconstitutional (and, thus, required suppression of all the evidence that the illegal entry yielded). Second, the defendant asseverates that his statements should be suppressed because they were obtained involuntarily. Third, and finally, he complains of sentencing error. We consider these contentions sequentially.

**A. <u>Knock and Announce</u>.**

We begin with the government's conceded violation of the knock and announce rule. That rule, extant at common law, has been codified in a federal statute that provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109. The rule is not a freestanding expression of policy but, rather, is "a command of the Fourth Amendment." <u>Hudson</u>, 126 S. Ct. at 2162. It applies equally to officers

wielding arrest warrants and officers wielding search warrants. See United States v. Alejandro, 368 F.3d 130, 133 (2d Cir. 2004).

In terms, the rule requires law enforcement officers to knock and announce their presence and authority prior to effecting a non-consensual entry into a dwelling. See Richards v. Wisconsin, 520 U.S. 385, 387 (1997); Wilson v. Arkansas, 514 U.S. 927, 929 (1995). It is well-settled, however, that in exigent circumstances law enforcement officers may eschew compliance with the rule. See United States v. Ramirez, 523 U.S. 65, 70, 73 (1998); Richards, 520 U.S. at 391, 394-95.

During the pendency of this appeal, the Hudson Court added a further refinement. In that case, the police had obtained a warrant to search for drugs and guns at Hudson's abode. While executing the warrant, the officers announced their presence, but tarried only three to five seconds before turning the doorknob and entering. See Hudson, 126 S. Ct. at 2162.

Hudson sought suppression of evidence subsequently gleaned on the ground that the premature entry violated his Fourth Amendment rights. The Court reiterated the interests protected by the knock and announce rule, including the preemption of violent self-defense measures, the safeguarding of property, and the respecting of human dignity. Id. at 2165. It proceeded to distinguish those interests from the interests protected by, for example, the requirement of a valid search warrant, the core

purpose of which is to shield "persons, houses, papers, and effects" from desultory government scrutiny. Id. (quoting U.S. Const. amend. IV). As compared to the latter, exclusion of evidence obtained in the case of a knock and announce violation simpliciter would not serve to vindicate the interests at stake. Id. at 2164-65. Weighing the potential deterrent value of applying the exclusionary rule against the potential social costs, the Court concluded that the balance did not favor exclusion. Id. at 2165-68.

In the case at hand, the defendant's opening brief, filed prior to the Hudson Court's decision, argued that no exigent circumstance justified the officers' noncompliance with the knock and announce rule (and that, therefore, the entry was illegal). The opinion in Hudson makes clear, however, that an inquiring court should undertake an exigent circumstances analysis only to determine whether there has been a knock and announce violation in the first instance, not to determine if, in the face of an acknowledged violation, evidence should be suppressed. See id. at 2163. Recognizing the import of this clarification, the defendant shifted gears in his reply brief and attempted to distinguish Hudson by arguing that here, unlike in Hudson, there was no underlying authority to enter the premises. Although the government maintains that the defendant paid insufficient attention to this argument below, the timing of the Hudson decision and the

ambiguities in the record prompt us to meet the argument head-on. We proceed to that task.

It is black-letter law that an arrest warrant carries with it, by implication, a limited grant of authority to enter the target's residence so long as there is reason to believe that the target is inside. See Payton v. New York, 445 U.S. 573, 603 (1980). Generally speaking, this principle extends to the target's hotel or motel room, since such an accommodation is akin to a temporary residence. See Stoner v. California, 376 U.S. 483, 490 (1964); United States v. Beaudoin, 362 F.3d 60, 65 (1st Cir. 2004);[2] see also United States v. Weems, 322 F.3d 18, 22 (1st Cir. 2003) (noting in dictum that if the defendant "effectively lived" where he was found, "the arrest warrant itself would be enough to authorize entry . . . to effectuate his arrest"). Here, however, there are two possible barriers that prevent us from summarily resolving the authority-to-enter issue on the basis of these precedents.

First, the defendant suggests that the motel room was not his because it was registered to Jennifer Sewall. The suggestion is that, at least in the absence of consent or exigent circumstances, "even when armed with an arrest warrant, police must

---

[2]The Supreme Court vacated the judgment in Beaudoin, albeit as to a codefendant, on a sentence-related ground. See Champagne v. United States, 543 U.S. 1102 (2005). The validity of the Beaudoin court's Fourth Amendment analysis is unaffected by that development.

generally have a search warrant to enter lawfully a third person's home."  Joyce v. Town of Tewksbury, 112 F.3d 19, 21-22 (1st Cir. 1997) (en banc) (per curiam).  This potential barrier is easily surmounted.

Leaving aside an obvious concern about the defendant's standing to raise this point at all, cf. Minnesota v. Carter, 525 U.S. 83, 91 (1998) (holding that non-resident defendants had no legitimate expectation of privacy in apartment in which they briefly conducted drug-dealing activities), the Joyce pronouncement does not help the defendant.  The reason behind the pronouncement is clear: "[a]rmed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances."  Steagald v. United States, 451 U.S. 204, 215 (1981).

It is readily evident that this reasoning finds no traction in the soil of this case.  The record makes manifest that regardless of the name in which the motel room was registered, the defendant — and only the defendant — was occupying it.  After all, at the suppression hearing the defendant admitted that he had been "staying" at the motel for "[a]pproximately three weeks." Moreover, throughout his appellate briefs the defendant refers to the room as "his room" or "his hotel room."  See, e.g., Appellant's Br. at 30, 35.  There is no evidence that either Jennifer Sewall (who informed the officers that she lived with her husband, not at

-10-

the motel) or any other individual occupied the room during the relevant time frame.

That gets the grease from the goose. Because the defendant was the sole resident of room 151, the officers' entry on the basis of a warrant for the defendant's arrest did not jeopardize any cognizable third-party interest. Joyce is, therefore, inapposite.

The second potential barrier arises out of the fact that Payton authorized an entry of a dwelling pursuant to an arrest warrant founded on probable cause. See Payton, 445 U.S. at 603. In this instance, the arresting officers wielded a parole violation warrant, see 18 U.S.C. § 4213, which by its terms was issued on the basis of "reliable information" that the defendant had breached the conditions of his parole. In some cases, such a distinction might make a dispositive difference. Cf. Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 619 (1989) ("Except in certain well-defined circumstances, a search or seizure . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."). Here, however, that is not the case.

Although the nature of the instant warrant might appear at first blush to cut against the government, it in fact cuts the other way. It is settled beyond hope of contradiction that parolees are not entitled to the same panoply of Fourth Amendment

-11-

protections as are ordinary citizens.  See Samson v. California, 126 S. Ct. 2193, 2198 (2006); see also United States v. Winchenbach, 197 F.3d 548, 553 (1st Cir. 1999) (explaining that an exception to Payton's arrest warrant requirement applies in cases of parolees and probationers).  Thus, a valid parole violation warrant, issued on the basis of reasonable grounds to believe that a parolee has violated the conditions of his parole, is adequate to support an entry into the parolee's domicile for the purpose of executing the warrant.  See United States v. Cardona, 903 F.2d 60, 69 (1st Cir. 1990).  It is immaterial to this Fourth Amendment analysis that no parole or probation officer is present when law enforcement agents enter the parolee's premises to execute the warrant.  See id.

Here, the magistrate judge supportably found that the defendant had waived any challenge to the validity of the parole violation warrant.  See supra note 1.  On appeal the defendant has not attempted to argue that the warrant was issued on the basis of a constitutionally infirm predicate. We must, therefore, treat the parole violation warrant as valid and enforceable.  Doing so, we conclude that the warrant provided the officers with lawful authority to enter the motel room for the purpose of arresting the defendant.

That ends this aspect of the appeal. Because Hudson applies with equal force in the context of an arrest warrant, the

district court did not err in refusing to order suppression based upon the officers' conceded violation of the knock and announce rule.

## B. **Voluntariness**.

Next, the defendant maintains that his statements to the authorities should be suppressed because they were obtained in violation of his constitutional rights. He claims that, after administering <u>Miranda</u> warnings,[3] the officers dangled improper incentives to secure his cooperation, such as offering to ditch certain incriminating evidence — he says that one of the officers went so far as to stomp on a glass crack pipe, shattering it while promising that, in return for cooperation, "[w]e can forget about this stuff" — and assuring him that cooperation would make it less likely that he would be classified as a career offender.

The magistrate judge, who saw and heard the witnesses at the suppression hearing, credited the officers' testimony that, from the outset, the defendant was cooperative, responsive, and keenly interested in what they might be able to do to make his lot easier. The judge found that no untoward threats or promises had been voiced; the officers merely conveyed to the defendant that they "would discuss with the prosecution the extent to which he had

---

[3]The defendant questioned below whether <u>Miranda</u> warnings were administered. The magistrate judge found as a fact that such warnings had been given in a timely manner. <u>See</u> <u>Pelletier</u>, 2005 WL 1800084, at *14. The defendant does not contest that finding on appeal.

cooperated." Pelletier, 2005 WL 1800084, at *15. Relatedly, the magistrate judge found that the defendant's version of the encounter, including his hyperbolic account of the crack pipe incident, was not credible. Id. at *6 n.11, *15.

On appeal, the defendant faces a steep uphill climb. We must accept the lower court's findings of fact as long as they are not clearly erroneous and subject its conclusions of law to de novo review. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Coplin, 463 F.3d 96, 100 (1st Cir. 2006).

In this instance, the challenged determination is factbound and, thus, subject to clear error review. See United States v. Pagán-Santini, 451 F.3d 258, 262 (1st Cir. 2006). Moreover, that determination was largely the product of credibility calls — and the trier's assessments of witness credibility are treated on appeal with great respect. See, e.g., United States v. Laine, 270 F.3d 71, 75 (1st Cir. 2001); United States v. Charles, 213 F.3d 10, 18 (1st Cir. 2000). Scouring the record, we discern no error, clear or otherwise, in the magistrate judge's findings.

To say more on this subject would be to paint the lily. A determination about whether police coercion has taken place inevitably hinges on the totality of the circumstances. United States v. Byram, 145 F.3d 405, 408 (1st Cir. 1998). Given the facts as supportably found by the magistrate judge, there is no

principled basis for concluding that the defendant's statements were involuntary.

## C. **Sentencing**.

The defendant's sentencing challenge has two facets. First, he argues that the district court incorrectly classified him as a career offender under USSG §4B1.1 (2004). Second, he argues that the court gave undue weight to the guidelines and failed to consider factors warranting a more lenient sentence. We address these arguments separately.

**1. Career Offender Status**. The sentencing guidelines provide in pertinent part that a defendant will be designated a career offender if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG §4B1.1(a)(3). Here, the defendant insists that the record contains no competent proof of his career offender status. The government counters that the defendant did not preserve any challenge to the adequacy of proof and that, in any event, the challenge fails on the merits. Because the record below reflects that the defendant objected on several occasions to his designation as a career offender, we assume, for argument's sake, that his adequacy of proof challenge has been preserved for appeal.

The essential facts are as follows. At the disposition hearing, the prosecutor, referring to the presentence investigation report (PSI Report), argued that the defendant should be considered

-15-

a career offender because he had twice been convicted of predicate offenses (and, thus, had crossed the career offender threshold). The prosecutor based this argument on two predicate convictions: a 1986 federal conviction and a 1995 Maine state conviction. According to the PSI Report, the federal conviction, which yielded a 10-year prison term, was for possession with intent to distribute cocaine and conspiracy to commit that offense. The state conviction, which resulted in a sentence of nine years (five suspended), was for drug trafficking. The prosecutor, without objection, introduced a certified copy of the state conviction. As to the federal conviction (which had occurred in the District of Maine), the prosecutor indicated that, if the court deemed it necessary, she could "go downstairs and get a certified copy." No one made such a request.

On appeal, the defendant strives to convince us that the government's proof of the federal conviction was inadequate under Shepard v. United States, 544 U.S. 13 (2005), and that, therefore, the "two predicate convictions" requirement was not satisfied. We are not persuaded.

The short of it is that Shepard and its progenitor, Taylor v. United States, 495 U.S. 575 (1990), address the appropriate sources for ascertaining the elements of a putative predicate offense when the statute of conviction encompasses both conduct that would constitute a predicate offense and conduct that

would not. See Shepard, 544 U.S. at 16; Taylor, 495 U.S. at 602; see generally United States v. Turbides-Leonardo, ___ F.3d ___, ___ (1st Cir. 2006) [No. 05-2374, slip op. at 8-9]; Conteh v. Gonzales, 461 F.3d 45, 53 (1st Cir. 2006).

Here, however, the defendant has offered no coherent attack on the match between the elements of his prior federal conviction and the description of "a controlled substance offense" within the purview of USSG §4B1.1(a)(3). Instead, he seems to concede, as he must, that possession with intent to distribute cocaine is unarguably a predicate offense under the career offender guideline; he argues only that the government failed to produce evidence of the fact of his federal conviction.

That argument is jejune. For one thing, the defendant did not object to the recital of the federal conviction in the PSI Report — and in the absence of any objection, a statement in a presentence report is sufficient to prove the fact proposed. See, e.g., United States v. Arrieta-Buendia, 372 F.3d 953, 955-56 (8th Cir. 2004) (explaining that, absent an objection, a PSI Report may be a permissible source of information about a prior conviction for sentence-enhancement purposes). For another thing, the sentencing court had the capacity to take judicial notice of its own records, see St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979); Fed. R. Evid. 201, which in this instance would

-17-

have cemented the existence of the earlier federal conviction. No more was exigible.

**2.   Reasonableness.**   The defendant's last remaining plaint is that the district court viewed the available sentencing options too grudgingly.  He excerpts the following passage from the district judge's comments at the disposition hearing:

> Mr. Pelletier, when I looked at your file earlier . . . I was tempted to give you the maximum sentence.  The reason I'm not going to give you 188 months is because you don't have any history of violence.

According to the defendant, the description of 188 months as "the maximum sentence" shows that the district court viewed the guidelines as establishing a mandatory sentencing range. Relatedly, the defendant charges that the district court gave insufficient consideration to the factors made relevant by 18 U.S.C. § 3553(a), mulling those factors only with respect to fixing a possible sentence somewhere within the guideline range.  Neither argument withstands scrutiny.

The Supreme Court's landmark decision in United States v. Booker, 543 U.S. 220, 245 (2005), rendered the guidelines advisory. In the aftermath of Booker, we review a district court's sentence for reasonableness.  Id. at 261.  That standard of review applies whether the actual sentence falls inside or outside the guideline sentencing range.  See Turbides-Leonardo, ___ F.3d at ___ [slip op.

-18-

at 12-13]; <u>United States</u> v. <u>Jiménez-Beltre</u>, 440 F.3d 514, 517 (1st Cir. 2006) (en banc).

In constructing a sentence under an advisory guidelines regime, a sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate. <u>See</u> <u>United States</u> v. <u>Dixon</u>, 449 F.3d 194, 203-04 (1st Cir. 2006); <u>Jiménez-Beltre</u>, 440 F.3d at 518-19.

In this instance, the district court, called upon to sentence the defendant without the benefit of our clarifying opinion in <u>Jiménez-Beltre</u>, correctly anticipated this approach. Except for his abortive challenge to the court's use of the career offender provision, previously rejected, the defendant effectively concedes the correctness of the calculated guideline sentencing range (151-188 months). By the same token, he raises no question about the sentencing court's eschewal of any and all departures. His attack, rather, strikes at the third and fourth steps of the sentencing pavane. He posits that the sentencing court overvalued the impact of the guideline sentencing range and, relatedly, failed to attach due weight to his advanced age (55), his long struggle

with drug addiction, his poor health, his cooperation with the authorities, and the sexual abuse that he endured as a child.

To begin, the defendant's reliance on the above-quoted excerpt from the sentencing transcript is misplaced. Looking at the disposition hearing as a whole, it is perfectly clear that the district court appreciated the advisory nature of the guidelines and acted accordingly. The court's use of the word "maximum" was, at worst, an awkward locution — even that is a stretch — and we will not read more into it than the context fairly suggests. Cf. Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1088 (1st Cir. 1993) (disregarding "infelicitous choice of phrase" where record as a whole made manifest that district court had undertaken proper analysis). There is simply no indication that the sentencing court overvalued the guidelines.

Moving to the allegedly mitigating factors, the defendant raised each of these considerations at sentencing. The district court, without rehashing the defendant's importunings, explained that it had "taken into account [the section 3553(a)] factors," "carefully considered the Sentencing Guideline Range set forth in the advisory Sentencing Guidelines," and determined that a 151-month sentence was appropriate. In arriving at this determination, the court gave significant weight to the defendant's recidivism, his repeated parole violations, his unexcused flight from supervision, and the fact that he had committed the offense of

-20-

conviction while on parole. The court concluded that, in its view, the defendant was not "capable or willing to follow the rules of society, and after having numerous chances . . . a sentence of 151 months is entirely appropriate."

In our view, the overall sentence is unimpugnable. The district court took into account the mitigating circumstances raised by the defendant and the factors delineated in section 3553(a), determined that the defendant's persistent reversion to criminal activity was inexcusable, and sentenced him at the nadir of the applicable guideline sentencing range. Even if the court were terse in rejecting the defendant's argument for mitigation, that terseness would not have undermined the reasonableness of the sentence. See, e.g., Turbides-Leonardo, ___ F.3d at ___ [slip op. at 16] (noting that brevity in sentencing "is not to be confused with inattention").

We add an eschatocol of sorts. Post-Booker, the sentencing guidelines, though advisory, remain an important datum in constructing a reasonable sentence. See United States v. Navedo-Concepción, 450 F.3d 54, 57, 59 (1st Cir. 2006); Jiménez-Beltre, 440 F.3d at 518. Consequently, a defendant who attempts to brand a within-the-range sentence as unreasonable must carry a heavy burden. See Turbides-Leonardo, ___ F.3d at ___ [slip op. at 15]; United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006). Here, the sentencing court, which gave a sensible set of reasons for its

choice of sentence, was not required to dwell on why some more lenient sentence would have been inadequate. See, e.g., Jiménez-Beltre, 440 F.3d at 519 (stating that, ordinarily, the reasonableness requirement is satisfied when the court offers a "plausible explanation" for the chosen sentence and reaches a "defensible overall result").

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the judgment below in all particulars.


**Affirmed**.