NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3295-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ROBERT RUCKER,

 Defendant-Appellant.

_________________________________

 Submitted November 1, 2016 – Decided June 8, 2017

 Before Judges Leone and Vernoia.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Indictment
 Nos. 13-09-1176 and 13-09-1178.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Rochelle Watson, Assistant
 Deputy Public Defender, of counsel and on the
 briefs).

 Andrew C. Carey, Middlesex County Prosecutor,
 attorney for respondent (Brian D. Gillet,
 Deputy First Assistant Prosecutor, of counsel
 and on the brief).

PER CURIAM

 Defendant Robert Rucker appeals from his judgments of

conviction dated October 15 and 17, 2014. Defendant pled guilty
to unlawfully possessing a .45 caliber Glock handgun and to

possessing it despite having a Michigan felony conviction. He

challenges the suppression ruling and aspects of his sentence. We

affirm his convictions, vacate his sentence in part, and remand.

 I.

 The following facts were found by the suppression court or

where indicated were testified to at the suppression hearing. On

July 8, 2013, Lieutenant Edgar Velasquez of the Piscataway Township

Police was contacted by a homicide detective in the Detroit police

department. The detective informed Velasquez that Detroit

authorities had issued an arrest warrant for defendant for

homicide, that he was a fugitive, and that he was believed to be

in possession of a handgun which was the murder weapon. The

detective also informed Velasquez defendant was "currently

staying" in Piscataway in a Motel Six in Room 240 and that the

length of stay was July 4 to July 18, 2013.1 The detective added

defendant was believed to be with a woman. The detective told

Velasquez the room was registered under the name "Anna Cunnegan."2

1
 Velasquez initially stated, and the court's opinion repeats,
that the length of stay was to July 14, but he corrected it to
July 18 after consulting his report.
2
 This alleged name is spelled in various ways in the record.

 2 A-3295-14T1
 Piscataway officers obtained a copy of the Detroit arrest

warrant for defendant. They also confirmed the Piscataway Motel

Six's Room 240 was registered under the name "Anna Cunnegan"

through July 18, 2013. The suppression court found the Piscataway

officers corroborated the "[h]otel, length of stay, name of person,

[and] room."

 Piscataway used its SWAT team to execute the arrest warrant.3

One part of the team listened through the door and heard a male

voice. According to Lieutenant Velasquez, the officers attempted

to enter the room surreptitiously using a key card, but the door's

security latch was engaged and the unsuccessful entry made noise.

They used a ram to get through the door and employed a flash-bang

device. They found defendant and a woman, J.S.4 Defendant and

J.S. were ordered to a prone position on the floor with their arms

outstretched in front of them.

 Patrol officer Allen Barboiu entered the room with the second

part of the SWAT team. He saw a rolled-up air mattress within one

to two feet of defendant's outstretched hands. Barboiu testified

defendant was not handcuffed, the mattress was within his grasp,

3
 Velasquez testified "it was a high risk arrest warrant, because
. . . it's a homicide suspect, with a weapon in his possession."
4
 We use her initials because the indictment was dismissed against
her after defendant pled guilty and was sentenced.

 3 A-3295-14T1
and "his head was actually lifted and he had his eyes on" the

rolled-up air mattress. Because of defendant's focus and proximity

to the rolled-up air mattress, Barboiu secured and unrolled it,

uncovering a concealed handgun. Barboiu testified he seized the

handgun with a full magazine and another bullet.

 In Indictment Nos. 13-09-1176 and 13-09-1178, defendant was

charged respectively with second-degree unlawful possession of a

handgun, N.J.S.A. 2C:39-5(b), and second-degree certain persons

not to have a firearm, N.J.S.A. 2C:39-7(b)(1). The trial court

denied "defendant's motion to suppress evidence seized from his

room at Motel Six." Defendant moved for reconsideration, and the

court reaffirmed its denial of suppression. Defendant pled guilty

to the charged offenses in return for a recommendation of five

years in prison with three years of parole ineligibility for

unlawful possession and a consecutive five years in prison with

five years of parole ineligibility for the certain persons

offense.5 The court imposed the recommended sentence.

 Defendant appeals, arguing:

 POINT I - POLICE ENTRY INTO THE HOTEL ROOM
 REGISTERED TO ANNE CUNNIGAN WITH ONLY AN
 ARREST WARRANT FOR ROBERT RUCKER WAS UNLAWFUL.

 POINT II - A REMAND FOR RESENTENCING IS
 NECESSARY BECAUSE DEFENDANT WAS NOT AWARDED

5
 Each of these sentences was the legal minimum for the offense.
N.J.S.A. 2C:43-6(a)(2), (c) (2007); N.J.S.A. 2C:39-7(b)(1).

 4 A-3295-14T1
 CREDITS TO WHICH HE IS ENTITLED UNDER STATE
 V. HERNANDEZ; AND THE TRIAL COURT FAILED TO
 PROVIDE REASONS FOR CONSECUTIVE SENTENCES.

 II.

 We first address the denial of suppression. We must hew to

our "deferential standard of review." State v. Rockford, 213 N.J.

424, 440 (2013). "'[A]n appellate court reviewing a motion to

suppress must uphold the factual findings underlying the trial

court's decision so long as those findings are supported by

sufficient credible evidence in the record.'" Ibid. (alteration

in original) (citation omitted). "Those findings warrant

particular deference when they are '"substantially influenced by

[the trial court's] opportunity to hear and see the witnesses and

to have the "feel" of the case, which a reviewing court cannot

enjoy."'" Ibid. (citation omitted). "Thus, appellate courts

should reverse only when the trial court's determination is 'so

clearly mistaken "that the interests of justice demand

intervention and correction."'" State v. Gamble, 218 N.J. 412,

425 (2014) (citation omitted).

 A.

 The suppression claim defendant raises on appeal was not

raised in the trial court. Before addressing that concern, it is

helpful to review the law pertinent to that claim.

 5 A-3295-14T1
 "[U]nder both the Fourth Amendment to the United States

Constitution and Article I, Paragraph 7 of our State Constitution,

searches and seizures conducted without warrants issued upon

probable cause are presumptively unreasonable and therefore

invalid." State v. Elders, 192 N.J. 224, 246 (2007). "Under our

constitutional jurisprudence, when it is practicable to do so, the

police are generally required to secure a warrant before conducting

a search of certain places, such as a hotel room." State v.

Hathaway, 222 N.J. 453, 468 (2015) (citations omitted). Here,

defendant conceded the officers had a valid arrest warrant.

 "An arrest warrant 'implicitly carries with it the limited

authority to enter a dwelling' where the suspect lives when there

is reason to believe the suspect is inside." State v. Brown, 205

N.J. 133, 145 (2011) (quoting Payton v. New York, 445 U.S. 573,

603, 100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639, 661 (1980)); see,

e.g., State v. Jones, 143 N.J. 4, 15 (1995) (holding the arrest

warrant for Collier allowed the officers the authority to enter

the apartment "in which Collier lived when there was reasonable

grounds to believe he was there"). "Generally speaking, this

principle extends to the target's hotel or motel room, since such

an accommodation is akin to a temporary residence." United States

 6 A-3295-14T1
v. Pelletier, 469 F.3d 194, 199 (1st Cir. 2006); see 3 LaFave,

Search & Seizure § 6.1(b), at 381 (5th ed. 2012).6

 Nonetheless, "[t]o search for the subject of an arrest warrant

in the home of a third party, the police must also obtain a search

warrant . . . absent exigent circumstances or consent." Brown,

supra, 205 N.J. at 145 (citing Steagald v. United States, 451 U.S.

204, 216, 101 S. Ct. 1642, 1649-50, 68 L. Ed. 2d 38, 48 (1981)).

"[A]bsent special circumstances, a police officer cannot search

for the subject of an arrest warrant in a home where the subject

is merely a visitor without first obtaining a search warrant."

State v. Cleveland, 371 N.J. Super. 286, 294 (App. Div.), certif.

denied, 182 N.J. 148 (2004).

 To implement both precepts, we apply the standard that, "in

the absence of consent or exigency, an arrest warrant is not

lawfully executed in a dwelling unless the officers executing the

warrant have objectively reasonable bases for believing that the

person named in the warrant both resides in the dwelling and is

within the dwelling at the time." Id. at 299 (quoting State v.

Miller, 342 N.J. Super. 474, 479 (App. Div. 2001)). In Miller,

supra, we affirmed suppression because the officers "did nothing

to confirm independently the snippet of opinion they had received"

6
 "Target" is used as a shorthand for the person named in the
arrest warrant. See Pelletier, supra, 469 F.3d at 199.

 7 A-3295-14T1
that the target was living with a woman, who credibly denied he

lived there. 342 N.J. Super. at 500; cf. State v. Craft, 425 N.J.

Super. 546, 554 (App. Div. 2012) (finding "the trial court's

reliance on Miller was misplaced" because a detective "knew the

[target's] family resided at the address provided by [a police]

intelligence officer").

 We have applied that standard to hotel rooms. In Cleveland,

supra, a confidential informant told Officer Montgomery the

"defendant was 'staying' with a woman" at a hotel and "the two

were sleeping in room 304 at the time of the call." 371 N.J.

Super. at 291. "Yet, this informant also told Montgomery that

Ebony Brown . . . was the 'legal tenant' of room 304, which

presumably meant that she, rather than defendant, had rented the

room. And, while Montgomery said that he knew defendant frequented

the Inn, he had no specific information that defendant resided at

the Inn." Id. at 295. We ruled Montgomery lacked "'objectively

reasonable [] grounds to believe that defendant was actually

residing in . . . room 304,'" rather than that he "was a visitor

in Brown's room." Ibid. (alteration in original).

 Nevertheless, an arrest warrant is sufficient to authorize

entry if the police have a reasonable belief, "regardless of the

name in which the motel room was registered, [that] the defendant

— and only the defendant — was occupying it." Pelletier, supra,

 8 A-3295-14T1
469 F.3d at 200-01. Similarly, "[a]s long as the officers

reasonably believed [the target] was a co-resident of the room,

the entry into the room to arrest [him with an arrest warrant] was

a reasonable one" even if it registered to someone other than the

target. United States v. Junkman, 160 F.3d 1191, 1194 (8th Cir.

1998), cert. denied, 526 U.S. 1094, 119 S. Ct. 1511, 143 L. Ed.

2d 663 (1999); see United States v. Jones, 696 F.2d 479, 486-87

(7th Cir. 1982), cert. denied, 462 U.S. 1106, 103 S. Ct. 2453, 77

L. Ed. 2d 1333 (1983); see also 3 LaFave, supra, § 6.1(b), at 379-

80 & nn.100-01.

 B.

 On appeal, defendant claims a search warrant was required

because the motel room was not his residence but the residence of

a third party. However, in his suppression motion brief, at the

suppression hearing, in his reconsideration motion brief, and at

the reconsideration hearing, defendant sought suppression on the

ground that the unrolling of the air mattress was not a valid

search incident to arrest.7 The trial court rejected that

argument, and defendant does not renew it on appeal.

7
 Defendant raised only one point in his suppression brief:

 THE SEARCH OF THE AIR MATTRESS WAS ILLEGAL AND
 ANY EVIDENCE LOCATED THEREIN SHOULD BE
 SUPPRESSED.

 9 A-3295-14T1
 Indeed, on reconsideration, in support of his challenge to

the search of the air mattress, defendant argued "that he had

established room 240 of the Motel 6 to be his residence," that

"the subject hotel room was the defendant's residence on July 8,

2013," and "that this was Mr. Rucker's residence." This argument

was apparently based on defendant's own certification.8 When

defendant pled guilty, he signed a plea form specifically

preserving the "[d]efense that the Hotel room was his residence."

 On appeal, defendant contends Room 240 was not his residence.

He argues the officers unlawfully "entered Anne Cunnigan's hotel

room – without a search warrant – to execute the arrest warrant

against [him]." However, defendant never argued to the trial

court that a search warrant was required because Room 240 was not

his residence.

 Defendant contends he raised that claim as part of a hearsay

objection. If defendant raised any claim at all in that context,

it was an incorrect assertion that a search warrant was required

to arrest a person in his own residence.

 While addressing a hearsay objection by defendant's

suppression counsel, the trial court asked him if he was

In his reconsideration brief, he raised only a reworded version
of that point.
8
 Neither party has supplied us with the certification.

 10 A-3295-14T1
challenging the entry into the room. He responded he was, because

the police "need a search warrant to arrest somebody they have an

arrest warrant for, in their house." The court correctly

responded: "That's not the law[.]" Suppression counsel then argued

that officers with "an arrest warrant for somebody" had to get a

search warrant to "search somebody's house" and that the same

principle applied when "a person's dwelling place is a hotel room."

The court correctly replied that "to arrest the person, they don't

need it." The court overruled the hearsay objection.

 Because defendant did not claim that Room 240 was not his

residence and that a search warrant was therefore required, the

trial court did not address such a claim. The court did not make

any finding on whether "Anna Cunnegan" was actually residing in

the hotel room or whether that name was being used by defendant

or J.S. to register the room in which one or both of them were

staying. Although the court's order denied defendant's motion to

suppress the gun seized in "his room," the court did not make a

factual finding that defendant was residing in Room 240. When

defendant asserted on reconsideration that the room was his

residence, the court stated that "even if this was [his]

'residence[,]' and I put residence in quotes, it still does not

negate the validity of the arrest warrant which gave the police

the authority to enter the room."

 11 A-3295-14T1
 The trial court also did not make any legal rulings on the

unraised claim. In particular, the court did not determine whether

the officers had "an objectively reasonable basis both for

believing the residence to have been the home of the person named

in the arrest warrant and that he was present in the home at the

time the warrant was executed." Miller, supra, 342 N.J. Super.

at 497.

 We decline to consider this newly-raised claim. Our Supreme

Court held in analogous circumstances it was improper to address

on appeal a suppression claim the defendant failed to raise in the

trial court. State v. Robinson, 200 N.J. 1, 22 (2009). Here, as

in Robinson, "[b]ecause that issue never was raised before the

trial court, because its factual antecedents never were subjected

to the rigors of an adversary hearing, and because its legal

propriety never was ruled on by the trial court, the issue was not

properly preserved for appellate review." Id. at 18-19.

Defendant's failure to raise the claim created "factual

shortcoming[s]," id. at 20, such as the absence of findings about

"Anna Cunnegan" and where defendant was residing on July 8, 2013.

 Moreover, the failure to raise defendant's
 present claim during the motion to suppress
 denied the State the opportunity to confront
 the claim head-on; it denied the trial court
 the opportunity to evaluate the claim in an
 informed and deliberate manner; and it denied
 any reviewing court the benefit of a robust

 12 A-3295-14T1
 record within which the claim could be
 considered.

 [Id. at 21.]

 Here, as in Robinson, "defendant never asserts that" his new

claim "creates an issue of trial error 'clearly capable of

producing an unjust result' that must be addressed 'in the

interests of justice.'" Robinson, supra, 200 N.J. at 21 (quoting

R. 2:10-2). In any event, Rule 2:10-2 is "not intended to supplant

the obvious need to create a complete record and to preserve issues

for appeal." Id. at 20. "Given this record, an appellate court

should stay its hand and forego grappling with an untimely raised

issue." Id. at 21. Accordingly, it is "inappropriate to consider,

for the first time on appeal, defendant's belated challenge to the

manner in which the [arrest] warrant was executed." Id. at 22.

Like Robinson, we uphold defendant's convictions. Ibid.9

 III.

 Defendant next challenges aspects of his sentence for the

certain persons offense, namely the imposition of that sentence

consecutively to the unlawful persons offense, and the quantity

of jail credits awarded against that sentence. "[T]rial judges

9
 Because we do not reach the merits of defendant's sole
suppression claim on appeal, we need not address the State's
alternative argument that entry into the motel room was justified
by exigent circumstances.

 13 A-3295-14T1
have discretion to decide if sentences should run concurrently or

consecutively," State v. Miller, 205 N.J. 109, 128 (2011), and

their decisions are reviewed for "abuse of discretion," State v.

Spivey, 179 N.J. 229, 245 (2004). Regarding the awarding of jail

credits, our review is "de novo." State v. DiAngelo, 434 N.J.

Super. 443, 451 (App. Div. 2014). Moreover, "[a] sentence imposed

pursuant to a plea agreement is presumed to be reasonable." State

v. Fuentes, 217 N.J. 57, 70-71 (2014).

 A.

 Defendant argues the trial court failed to consider the

standards for imposing a consecutive sentence set forth in State

v. Yarbough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014, 106

S. Ct. 1193, 89 L. Ed. 2d 308 (1986). In Yarbough, after

acknowledging "there can be no free crimes in a system for which

the punishment shall fit the crime," our Supreme Court ruled the

factors "to be considered by the sentencing court should include"

whether:

 (a) the crimes and their objectives were
 predominantly independent of each other;

 (b) the crimes involved separate acts of
 violence or threats of violence;

 (c) the crimes were committed at different
 times or separate places, rather than
 being committed so closely in time and
 place as to indicate a single period of
 aberrant behavior;

 14 A-3295-14T1
 (d) any of the crimes involved multiple
 victims;

 (e) the convictions for which the sentences
 are to be imposed are numerous.

 [Id. at 643-44.]

The Yarbough Court added: "[T]he reasons for imposing either a

consecutive or concurrent sentence should be separately stated in

the sentencing decision." Id. at 643.

 At sentencing, the trial court did not mention Yarbough or

its factors, but simply stated the certain persons "sentence shall

be consecutive to the [unlawful possession] sentence." The court

discussed the aggravating and mitigating factors, but that alone

would not ordinarily satisfy Yarbough. See State v. Eisenman, 153

N.J. 462, 479 (1998). In the judgment of conviction, the court

added "[t]his was a negotiated plea this Court is willing to

accept." However, "the terms of a plea bargain do not control the

inherent sentencing authority of the court" or satisfy the court's

duty to "engage[] in its own analysis of the principles stated in

Yarbough." State v. Friedman, 209 N.J. 102, 123 (2012).

 "To be sure, sentences can be upheld where the sentencing

transcript makes it possible to 'readily deduce' the judge's

reasoning," but only "when the record is clear enough to avoid

doubt as to the facts and principles the court considered and how

 15 A-3295-14T1
it meant to apply them." Miller, supra, 205 N.J. at 129-30. Thus,

we have affirmed where "[n]o explicit assessment of the Yarbough

factors was made in support of imposition of a consecutive

sentence, but the reasons are self evident." State v. Soto, 385

N.J. Super. 247, 257 (App. Div.), certif. denied, 188 N.J. 491

(2006). In Soto, we affirmed because there "were separate crimes

committed on separate occasions and the plea agreement itself

called for consecutive sentences." Ibid.; see State v. Jang, 359

N.J. Super. 85, 97-98 (App. Div.) (affirming because there "were

individual crimes with two separate victims"), certif. denied, 177

N.J. 492 (2003).

 Here, the plea agreement called for consecutive sentences,

but it is not as obvious what Yarbough factor(s) were relied upon

to impose them. The prosecutor argued the State agreed to a plea

agreement for consecutive sentences because unlawful possession

and certain persons offenses "are two distinct offenses," because

of "the legislative intent behind the two different offenses," and

because of "the case law."10 However, there is no indication the

trial court adopted that rationale.

10
 A certain persons conviction does "not merge with the weapons
possession conviction," State v. Lopez, 417 N.J. Super. 34, 37 n.2
(App. Div.), certif. denied, 205 N.J. 520 (2011), because they are
"two distinct possessory crimes" and "[t]he Legislature could not
have intended that a convicted felon who possesses or carries an

 16 A-3295-14T1
 Thus, "the record does not reveal that the trial court

expressly or implicitly considered [Yarbough's] guiding legal

principles governing its discretion" and "does not reflect a direct

or indirect discussion of the basis for imposing consecutive

sentences." Miller, supra, 205 N.J. at 129-30. Moreover, "the

record also supported Yarbough factors that might favor concurrent

sentences." Id. at 129. As in Miller, "[b]ecause we cannot

sufficiently discern the trial court's reasoning, we remand for

resentencing" to determine whether, applying the Yarbough factors,

the certain persons sentence should be concurrent or consecutive.

Id. at 130. "We offer no view on the outcome of that hearing

because the decision to impose consecutive or concurrent sentences

rests in the first instance with the trial court." Ibid.

 B.

 Defendant next contends he was entitled to additional jail

credits against his certain persons sentence. Rule 3:21-8 provides

"[t]he defendant shall receive credit on the term of a custodial

operable gun . . . be treated the same as a defendant who is not
such a felon," State v. Wright, 155 N.J. Super. 549, 553-55 (App.
Div. 1978) (addressing predecessor statutes). Nonetheless, "there
is no statutory mandate that the court impose a consecutive
sentence for a certain persons conviction," Lopez, supra, 417 N.J.
Super. at 37 n.2, so a certain person sentence "may either be
concurrent with, or consecutive to, that for the [unlawful
possession] conviction," Wright, supra, 155 N.J. Super. at 555.

 17 A-3295-14T1
sentence for any time served in custody in jail . . . between

arrest and the imposition of sentence."

 On the unlawful possession indictment, the trial court

awarded jail credit of 464 days, representing the period from his

July 8, 2013 arrest to his October 14, 2014 sentencing. On the

certain persons indictment, the court awarded defendant jail

credit of 400 days, representing the period from the September 10,

2013 filing date of the certain persons indictment to his October

14, 2014 sentencing.

 Defendant claims that under State v. Hernandez, 208 N.J. 24

(2011), he should have received 464 days jail credit on the certain

persons indictment as well as on the unlawful possession

indictment, asserting he "was arrested on both offenses on July

8, 2013." The State disagrees, arguing defendant was not charged

with the certain persons offense until that indictment issued on

September 10, 2013.

 Under Hernandez, the timing of the indictment is not

dispositive. There, our Supreme Court addressed the unrelated

cases of two defendants. Id. at 28. The Court's decision

regarding defendant Rose is more pertinent here. Like defendant

here, Rose was the subject of two indictments in the same county,

and he pled guilty and was sentenced on both indictments

simultaneously. Id. at 31-32. He sought jail credits against a

 18 A-3295-14T1
consecutive sentence on the drug indictment for time spent in

custody after his first arrest on theft charges, but before the

drug indictment issued. Id. at 32-33, 35. The trial court awarded

jail credits for the period of his theft arrest to the sentencing

solely against the sentence under the theft indictment, not against

the consecutive sentence under the drug indictment that contained

a parole ineligibility period. Id. at 33.

 The Supreme Court "granted certification to consider the

proper interpretation and application of Rule 3:21-8, the rule

governing the award of jail credits, to cases involving defendants

sentenced to imprisonment on multiple indictments." Id. at 28.

The Court noted "[i]f multiple charges are embodied in a single

indictment and two or more counts are disposed of, the total amount

of jail credits reduces the aggregate custodial sentence imposed."

Id. at 47-48. The Court rejected the proposition that the credits

should be different "if they are embodied in separate indictments."

Id. at 48. "The issue of credits simply cannot turn on such

happenstance." Ibid.

 Thus, under Hernandez, courts must "apply jail credit in a

manner that prevents the real time served from turning on

'happenstance,' such as whether the same charges are included in

one indictment or spread over multiple indictments." State v.

Joe, 228 N.J. 125, 131 (2017). Moreover, "as interpreted by

 19 A-3295-14T1
Hernandez, Rule 3:21-8 requires that a defendant receive jail

credit even though the charges are not directly responsible for

his or her incarceration." State v. Rawls, 219 N.J. 185, 194

(2014).

 The State tries to analogize to DiAngelo, supra, which

concerned "a custodial term for a violation of probation (VOP)."

434 N.J. Super. at 446. There, "[w]e reject[ed] defendant's

assertion credit against the VOP sentence begins upon her arrest

on new charges." Id. at 461. We held "[t]he more appropriate

date for credit against the VOP sentence is the date the VOP

statement of charges issued." Id. at 462. The State argues the

certain persons indictment should be treated like a VOP statement

of charges. However, nothing in DiAngelo indicates that its ruling

or rationale extends beyond the issues posed by a VOP. See, e.g.,

id. at 458-59 ("We confine our review to a defendant who is in

custody after commission of another criminal offense while on

probation, and against whom a summons for a VOP has been issued

rather than an arrest warrant"). We decline to extend DiAngelo

to alter the treatment of the issue of multiple indictments, which

the Supreme Court addressed in Hernandez.

 Nonetheless, we do not grant defendant's request to increase

the jail credits on his certain persons sentence because our

Supreme Court has recently made clear that the appropriate

 20 A-3295-14T1
treatment of jail credits depends on whether the sentences are

consecutive or concurrent. State v. C.H., 228 N.J. 111 (2017).

In C.H., the Court "consider[ed] whether a defendant who is

simultaneously sentenced to consecutive sentences on two separate

indictments is entitled to the application of jail credit against

both indictments pursuant to Rule 3:21-8." Id. at 113. The Court

recognized "some language in Hernandez may have caused confusion

about whether jail credits can reduce sentences on each charge of

a consecutive sentence." Id. at 121. The Court ruled "[n]either

the disposition of Hernandez nor the overarching policy

considerations in that opinion warrant the application of [such]

double jail credit." Id. at 113.

 To avoid double credit, the Court held in C.H.:

 Hernandez is modified as follows: double
 credit should not be awarded where a defendant
 is sentenced to consecutive sentences under
 separate indictments and receives the optimal
 benefits of jail credit for time spent in pre-
 sentence custody. To the extent that
 Hernandez has been read differently with
 respect to consecutive sentences we do not
 follow that approach.

 [Id. at 123.]

The Court instructed: "The appropriate course of action is to view

the separate sentences together and apply jail credit to the front

end of the aggregate sentence. This application maximizes the

 21 A-3295-14T1
benefits of jail credit for defendants without awarding double

time." Id. at 121-22.

 Accordingly, on remand the trial court should determine the

appropriate allocation of jail credits at the same time it

determines whether the sentences should be consecutive or

concurrent. If the court imposes a consecutive sentence, then all

464 days of jail credits should be allocated against the unlawful

possession sentence.11 If the sentences are concurrent, the 464

days of jail credits should be applied once against the concurrent

sentence for both offenses.

 We vacate the portions of the certain persons judgment of

conviction imposing that sentence consecutively and awarding 400

days of jail credit. We remand for a determination whether the

certain persons sentence should be concurrent or consecutive and

subject to the 464 days of jail credits. We do not retain

jurisdiction. We affirm in all other respects.

 Affirmed in part, vacated in part, and remanded.

11
 That will "maximize the benefits to the defendant by applying
jail credit to the front end of the imprisonment term," namely the
unlawful possession sentence. C.H., supra, 228 N.J. at 123. The
464 days of jail credits would be used up during the three-year
period of parole ineligibility on the unlawful possession
sentence, and any award of jail credits against the consecutive
certain persons sentence would result in improper double credit.

 22 A-3295-14T1